Brendan J. O'Rourke (BO-2351)
Adam D. Siegartel (AS-6947)
Alexander Kaplan (AK-4207)
Patrick J. Dempsey (PD-8372)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
(212) 969-3000
Fax: (212) 969-3671
email: borourke@proskauer.com

*Attorneys for Plaintiff Major League Baseball Properties, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
MAJOR LEAGUE BASEBALL PROPERTIES, INC.

        Plaintiff,

 -against-

THE UPPER DECK COMPANY, LLC

        Defendant.
------------------------------------------------------------- x

Civil Action No. 10-cv-732-RWS
ECF Case

**COMPLAINT**

Plaintiff MAJOR LEAGUE BASEBALL PROPERTIES, INC. ("MLBP" or "Plaintiff"), by its attorneys Proskauer Rose LLP, for its Complaint against Defendant THE UPPER DECK COMPANY, LLC ("Upper Deck" or "Defendant"), alleges as follows:

**Nature of the Action**

1. This is an action for trademark infringement, trade dress infringement, trademark dilution, trade dress dilution, breach of contract, and unfair competition under the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), as well as New York state and common law.

2.       Defendant Upper Deck is a former licensee of MLBP with respect to the use of names, trademarks, and trade dress of MLBP, each of the 30 Major League Baseball clubs ("MLB Clubs"), the Office of the Commissioner of Baseball, and their respective affiliated entities (collectively, the "MLB Entities") for the manufacture, distribution, offering for sale, and sale of baseball trading cards. MLBP is indirectly owned by the MLB Clubs and is a licensee and acts as a licensing agent for the MLB Entities.

3.       Despite its contractual obligations to refrain from manufacturing, distributing, offering for sale, or selling trading cards featuring the names, trademarks, and trade dress of the MLB Entities (collectively defined below as the "MLB Marks"), as well as its express and undeniable acknowledgement of the validity of the MLB Marks which Upper Deck previously licensed from MLBP, Upper Deck has just distributed for sale, and is on the verge of further distributing, several lines of trading cards featuring these very MLB Marks.

4.       Upper Deck is well aware that it lacks the rights to issue these trading cards and is willfully breaching the surviving terms of its contracts with MLBP as well as violating MLBP's and the MLB Clubs' rights in the MLB Marks. Upper Deck's unauthorized trading cards depict certain Major League Baseball players in their particular Club's proprietary uniforms, which plainly and prominently feature the well-known trademarks of the respective MLB Club, as well as the overall distinctive trade dress of that MLB Club's uniform.

5.       Unfortunately, Upper Deck's current conduct is reflective of a pattern of utter disrespect for the contractual and intellectual property rights of those from whom it licenses valuable trademarks and intellectual property to appear on the trading cards Upper Deck manufactures. Prior to the unauthorized release of the infringing trading cards at issue here, Upper Deck defaulted on its obligations to MLBP to make more than $2 million in payments it

owed to MLBP in connection with its use of the MLB Marks and to fulfill numerous affirmative obligations, including with respect to quality control and royalty reporting, among others. Those payments and obligations remain outstanding.

6. Upper Deck's flagrant pattern of disregard of the intellectual property rights of its licensors is now well documented. According to published reports, Upper Deck also just agreed to a multi-million dollar settlement and permanent injunction for distributing hundreds of thousands of counterfeit Yu-Gi-Oh! trading cards depicting hugely popular Japanese animated images. Incredibly, Upper Deck was the licensed distributor for the plaintiff's legitimate Yu-Gi-Oh! cards and, nonetheless, counterfeited and distributed the fake cards, causing substantial harm to its own licensor. This settlement followed entry of a preliminary injunction last year by which Upper Deck was enjoined from, among other things: "[U]sing, displaying or reproducing Konami's trademarks or any copyrighted drawings, artwork or text from the Yu-Gi-Oh! Trading Card Game . . . in connection with the distribution, promotion, advertising, offering for sale or sale of any Yu-Gi-Oh! Trading Card Game products" and "offering for sale, selling or otherwise distributing without Konami's authorization any Yu-Gi-Oh! Trading Card Game products that were authorized to be printed by Konami ... ."

7. Here, Upper Deck's unlawful conduct is causing and, unless enjoined, will continue to cause serious and irreparable harm to MLBP and the MLB Clubs. Consumers will be confused into believing that they are purchasing trading cards licensed and endorsed by the MLB Entities when, in fact, the trading cards are unlicensed, unauthorized imitations. Further, MLBP will lose its right and obligation under the law to exercise control over the nature and quality of the trading cards depicting Major League Baseball players in their team uniforms and displaying the famous MLB Marks. Upper Deck's cards will dilute the value of the MLB Marks,

including, without limitation, the MLB Clubs' distinctive trade dress, and MLBP's valuable relationship with its exclusive trading card licensee will be irreparably harmed if Upper Deck is permitted to continue to sell its unauthorized cards featuring the MLB Marks.

## THE PARTIES

8. Plaintiff MLBP is a New York corporation with its principal place of business at 245 Park Avenue, New York, New York 10167.

9. Upon information and belief, Defendant Upper Deck is a Nevada corporation with its corporate offices at 985 Trade Drive, Suite A, North Las Vegas, NV 89030.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over the federal trademark claims arising under the Lanham Trademark Act of 1946, as amended, 15 U.S.C. §1051 et seq., pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338. The Court has subject matter jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1332 and has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

11. This Court has personal jurisdiction over defendant and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Upper Deck is doing business in this district, is, on information and belief, selling the trading cards at issue in this case within this district, and has consented to jurisdiction in this district with respect to any disputes arising under its prior license agreements with MLBP. Venue is also proper in this judicial district under 28 U.S.C. § 1391(c).

## FACTS

### MLBP and the MLB Marks

12. MLBP is indirectly owned by the MLB Clubs and is a licensee of and acts as licensing agent for the MLB Entities. MLBP is responsible for, among other things, licensing

the manufacture, production, distribution, offering for sale, sale, advertisement, and promotion of products bearing the intellectual property of the MLB Entities and for the protection and enforcement of rights in such intellectual property.

13. Each of the MLB Clubs owns and uses its MLB Marks, including without limitation, the trademark names under which it competes, along with a variety of other names, trademarks, service marks, logos, and designs, as well as its distinctive trade dress, including, without limitation, the unique and inherently distinctive color combinations, striping, and/or positioning of the Club names, logos, and other elements (such as geographic designations) used on the MLB Clubs' uniforms (sometimes referred to herein separately as the "MLB Uniform Trade Dress"). All of the various names, trademarks, service marks, logos, designs, and trade dress elements used and/or owned by the MLB Entities, including the MLB Clubs, including without limitation the MLB Uniform Trade Dress, and MLPB, including without limitation the Major League Baseball silhouetted batter logo ("Silhouetted Batter Logo") are referred to collectively herein as the "MLB Marks." These MLB Marks also include individual team logos used, *inter alia*, on baseball caps and helmets (sometimes referred to herein as "MLB Cap and Helmet Logos").

14. The MLB Clubs and MLBP own thousands of trademarks and logos, which are the subject of trademark registrations. From the sampling of Upper Deck's infringing trading cards that MLBP has been able to review thus far, it appears that a large number of MLB Marks are depicted on the cards and MLBP has determined that a large number are the subject of federal registrations. Because MLBP has not had the opportunity to review the entire sets of infringing Upper Deck cards it is not possible at this point to provide a list of all of the MLB Entities' relevant registrations for the MLB Marks. As such, listed below (and attached hereto as

Exhibit A) are a representative sample of MLB Marks which appear on the infringing cards for which the MLB Entities own federal registrations: U.S. Reg. Nos. 2,666,228; 2,947,119; 2,573,347; 2,645,323; 2,634,700; 1,729,299; 2,506,407; 1,536,262; 3,545,454; 2,536,081; 2,569,766; 2,631,576; 2,575,838; 1,912,055; 2,712,700; 2,531,778; 3,238,176; 1,532,657; 2,546,925; 1,535,173; 1,535,265; 3,320,067; 1,571,564; 1,570,831; 2,536,294; 2,575,850; 1,560,783; 3,628,729; 3,036,584; 2,720,480; 2,007,273; 1,936,820; 3,442,256; and 3,559,199.

15. MLBP has licensed hundreds of entities the right to use the MLB Marks on or in connection with a wide variety of authorized goods and services. As a result of MLBP's licensing efforts, the combined domestic wholesale sales of Major League Baseball merchandise bearing the MLB Marks over the past ten years alone have exceeded $10 billion dollars.

16. The MLB Marks have also been marketed and promoted extensively for many years on television, in major magazines and newspapers, on radio, and via the Internet, and have been the subject of extensive unsolicited media coverage across the United States and internationally. In addition, the MLB Entities and MLBP spend millions of dollars annually in advertising and promoting goods and services identified by the MLB Marks, including the Major League Baseball games attended by millions of fans annually at ballparks throughout North America and enjoyed by millions more fans as a result of television and radio broadcasts and transmissions of such games via the Internet or other interactive media.

17. As a result of the substantial use and promotion of the MLB Marks for many years in connection with baseball-related goods and services and as part of an extensive licensing program on a wide variety of goods and services relating to and promoting the MLB Clubs, the MLB Marks, including without limitation the MLB Uniform Trade Dress and the MLB Cap and

Helmet Logos, have become famous among the relevant consuming public and possess significant goodwill of great value to the MLB Entities.

### The Baseball Trading Card Business

18. The baseball trading card business is a highly visible one for MLBP and has been for decades. Over the past decade, MLBP's revenues from baseball card licensing is well over $75 million.

19. Notwithstanding the importance of trading cards, the overall trading card business for the four major sports (baseball, football, basketball, and hockey) has been steadily declining for many years, falling from approximately $1 billion at its height to approximately $200 million at present. In addition, the share within the trading card sector for Major League Baseball licensed cards has decreased over the years from approximately 75%-80% in the mid-1980's to roughly 15-20% of the total business (including non-sports trading cards) as of today.

20. As a result, in MLBP's reasoned judgment, having an excessive number of trading card licensees diminishes and dilutes the value of the trading card business for MLBP. MLBP has, therefore, made the strategic business decision to reduce the number of companies that are authorized and licensed to manufacture and sell complete sets of official MLBP trading cards.

21. Specifically, MLBP has decided that it is currently most beneficial to enter into an exclusive multi-year licensing deal with just one trading card manufacturer and distributor, The Topps Company, Inc. ("Topps"). Topps has become the "Official Baseball Card of Major League Baseball," and under this exclusive arrangement, Topps has the exclusive right to use the MLB Marks on trading cards for retail distribution beginning on January 1, 2010.

### The Upper Deck License Agreements

22.     Upper Deck manufactures and distributes, among other products, sports trading cards throughout the United States. Beginning in 1989, MLBP granted Upper Deck a series of licenses pursuant to which Upper Deck obtained the right to produce trading card sets featuring Major League Baseball players in the MLB Uniform Trade Dress and bearing the MLB Marks (the "Upper Deck License Agreements"). The most recent license agreement between MLBP and Upper Deck granting the right to produce and distribute trading cards in the United States became effective in 2006 and expired on October 31, 2009 (with a two month sell-off period expiring on December 31, 2009).

23.     Under the Upper Deck License Agreements, Upper Deck began producing baseball trading cards approximately twenty years ago, and such cards have always been produced under the authorization of and license by MLBP. Upper Deck has derived great benefit and significant revenue having been a longstanding licensee of MLBP for trading cards. As far as MLBP is aware, through the end of 2009, Upper Deck never previously attempted to produce baseball trading cards without a license from MLBP.

24.     The Upper Deck License Agreements unequivocally provide that Upper Deck will not use the MLB Marks (including, without limitation, the MLB Uniform Trade Dress or the MLB Cap and Helmet Logos) in any capacity without the prior written consent of MLBP. In the most recent of the Upper Deck License Agreements, Upper Deck agreed as follows:

> Licensee hereby acknowledges the proprietary nature of all MLB Marks and acknowledges that all rights, title and interest to the MLB Marks, including Derivative Works (as defined below) created therefrom, belong to the individual MLB Entities and/or Licensor, as the case may be. For purposes of this Paragraph 15, "Derivative Works" refers to arrangements, modifications and alterations of the MLB Marks.... Licensee represents that it has not made any unauthorized use of MLB Marks, including, without limitation, those contained in Licensor's Official Style Guide, <u>and acknowledges that a license from the MLB Entities and/or Licensor is</u>

<u>required in order to use such MLB Marks or create derivatives thereof, and agrees that it will during or after the License Period make no use of any such MLB Marks, other than as provided in this Agreement, without the prior written consent of Licensor or the appropriate individual MLB Entity.</u> ... Licensee further acknowledges that for purposes of this Paragraph 15, <u>"use" includes, but is not limited to, trademark, fair, incidental, descriptive or functional uses.</u> (emphasis added; capitalized terms defined in Upper Deck License Agreements)

25. The Upper Deck License Agreements explicitly provide that MLBP has "absolute approval ... of the Licensed Products and all packaging at all stages of the development thereof." Under the License Agreements, Upper Deck was obligated to furnish to MLBP for written approval "designs of each Licensed Product and samples of each Licensed Product before its manufacture, sale, promotion, advertisement, or distribution, whichever first occurs ...."

26. MLBP rigorously exercised this right and legal obligation of quality control during the term of the Upper Deck License Agreements, making sure that Upper Deck's trading cards and use of the MLB Marks, including, without limitation, the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, were in compliance with MLBP's branding guidelines. Indeed, U.S. trademark law provides not only the right of trademark licensors to exercise quality control over the use of their trademarks by licensees, but also affirmative legal obligations to exercise such quality control.

27. Upper Deck also acknowledged in the Upper Deck License Agreements that it "recognizes the great value of the publicity and goodwill associated with the MLB Marks and, in such connection, acknowledges that such goodwill belongs exclusively to Licensor ... and that the MLB Marks have acquired a secondary meaning in the minds of the purchasing public."

28. Upper Deck also agreed in the Upper Deck License Agreements that its failure upon the expiration of the Agreements to cease manufacturing and distributing products

depicting the MLB Marks would result in immediate and irreparable damage to MLBP, entitling MLBP to injunctive relief.

29. MLBP and Upper Deck agreed in the Upper Deck License Agreements that the Agreements would be governed by the laws of the state of New York, that this judicial district and the Supreme Court of the State of New York would be the sole venues for all disputes arising directly or indirectly from the relationship created or the transactions contemplated under the Agreements, and that each of the parties consents to the jurisdiction and venue of either court.

30. The Upper Deck License Agreements expressly provide that the contractual provisions cited above survive the expiration of the Agreements.

## The Current Dispute

31. Notwithstanding the expiration of the Upper Deck License Agreements as of October 31, 2009, and the absence of any new license from MLBP authorizing the use of the MLB Marks, less than three months later, Upper Deck has begun manufacturing, distributing, offering for sale, and selling at least three trading card sets featuring cards using the MLB Marks, including, without limitation, the MLB Uniform Trade Dress and MLB Caps and Helmet Logos.

32. During the week of January 25, 2010, Upper Deck shipped to distributors two series of trading cards: the Signature Stars 2009 ("2009 Signature Stars Series") and Ultimate Collection 2009 ("2009 Ultimate Collection Series") (collectively, the "2009 Unauthorized Series"). Distributors have begun delivering the 2009 Unauthorized Series to retail stores.

33. Based upon the limited amount of product that MLBP has seen, both 2009 Unauthorized Series include numerous cards depicting current and former Major League Baseball players in the MLB Uniform Trade Dress and featuring various other MLB Marks, including, without limitation, the MLB Cap and Helmet Logos. The MLB Uniform Trade Dress

and various other MLB Marks are clearly visible on the packaging and on the vast majority of cards in the 2009 Unauthorized Series and will be readily identifiable by the relevant class of consumers. In each instance, the 2009 Unauthorized Series cards show the particular Major League Baseball player in his actual MLB Club uniform displaying the distinctive MLB Uniform Trade Dress. (Copies of representative examples of packaging and cards from the 2009 Signature Stars Series are attached hereto as Exhibit B; copies of representative examples of packaging and cards from the 2009 Ultimate Collection Series are attached hereto as Exhibit C.)

34. Upper Deck is about to release an additional series of trading cards called Series 1 (the "2010 Unauthorized Series 1") which also include trading cards depicting Major League Baseball players in their actual MLB Club uniforms displaying the distinctive MLB Uniform Trade Dress and featuring other visible and recognizable MLB Marks, including, without limitation, the MLB Cap and Helmet Logos. Upon information and belief, the 2010 Unauthorized Series 1 trading cards are in the possession of Upper Deck's distributors and are due to be shipped to retail stores imminently. (Copies of representative examples of packaging and cards from the 2010 Unauthorized Series 1 set are attached hereto as Exhibit D.)

35. Last year, while licensed by MLBP, Upper Deck released a set of genuine and authorized trading cards also called Series 1 (the "2009 Authorized Series 1"), the wrappers of the individual card packs and the cover of the trading card box for which bear a striking resemblance to and, in some respects, are virtually identical to the 2010 Unauthorized Series 1 set in that they featured the same player in the same Major League Baseball uniform – namely Derek Jeter in the iconic New York Yankees home pinstripe uniform – against a virtually similar radiating design. Consumers who purchase and collect baseball cards are likely to mistakenly believe the 2010 Unauthorized Series 1 set to be a continuation of the 2009 Authorized Series 1

set. MLBP understands that Upper Deck has obtained a license from the Players Association to display the images of Major League Baseball players on trading cards, in the same way that Upper Deck obtained a license to do so when it was a licensee of MLBP. However, that license from the Players Association did not during the time that Upper Deck was a licensee of MLBP and does not now in any way authorize Upper Deck to display any of the MLB Marks, including but not limited to the MLB Uniform Trade Dress or MLB Cap and Helmet Logos, on its trading cards, nor could it, as the MLB Marks, including the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, are owned by and are exclusively proprietary to the respective MLB Entities.

36. On January 28, 2010, immediately after becoming aware of the impending sale of the 2009 Unauthorized Series, MLBP sent a letter to Upper Deck advising it that its use of the MLB Marks constituted a violation of federal and state trademark laws and was also a breach of the Upper Deck License Agreements. The letter demanded that Upper Deck cease and desist from exploitation of the unauthorized trading cards and any further use of the MLB Marks.

37. Upper Deck has refused to comply with MLBP's demands, and follow-up attempts to resolve the dispute amicably, including over the past several days, unfortunately have proved unsuccessful. MLBP has held discussions with Upper Deck in recent weeks in an attempt to resolve Upper Deck's myriad defaults under the Upper Deck License Agreements to no avail. Unless and until Upper Deck is enjoined from any further unauthorized exploitation of the MLB Marks, Upper Deck will continue to use the MLB Marks in violation of MLBP's rights. Thus, MLBP has been forced to bring this case and to seek immediate relief.

38. Upon information and belief, by virtue of its unlawful conduct, Upper Deck has earned revenue to which it is not entitled in law or equity.

39. Upper Deck's actions have been undertaken in willful, wanton, and blatant disregard of MLBP's and all related MLB Entities' rights.

40. As a result of Upper Deck's unlawful and willful actions, MLBP has been damaged and has suffered, and continues to suffer, substantial, immediate and irreparable injury for which it has no adequate remedy at law.

41. That irreparable injury includes, for example: MLBP's loss of control of the use of the famous and valuable MLB Marks and inability to make certain that those marks are not being distorted or negatively impacted in the public eye; the effective loss of MLBP's business choice to license the MLB Marks exclusively to one licensee and the resulting damaged cache of the only validly licensed line of retail MLBP trading cards; confusion caused to the consumer by making he or she mistakenly believe that the Upper Deck cards are genuine cards approved by MLBP, when they are not; and unquantifiable harm to MLBP's ability to maintain and develop relationships with licensees in other businesses besides trading cards which will perceive that MLBP cannot guarantee them exclusivity where that right has been bargained and paid for.

### Upper Deck's Defaults Under the License Agreements

42. In addition to its violations of the Upper Deck License Agreements discussed above, Upper Deck is also in default under those Agreements for failure to perform multiple terms and conditions prior to the expiration of the Agreements.

43. Those obligations include the failure to pay amounts in excess of $2,400,000 due under the Upper Deck License Agreements, specifically, Contract Nos. ML-2302H (the "Domestic Trading Cards Agreement"), MLI-115B (the "International Trading Cards Agreement"), ML-4055C (the "Hall of Fame Trading Cards Agreement"), ML3940B (the "Hall

of Fame Authentication Program Agreement"), and ML-2949F (the "MLB Authentication Program Agreement").

44. MLBP has demanded that Upper Deck pay these sums due but has not received any of the money owed.

45. MLBP has also identified the multiple other obligations of which Upper Deck is in default under the Upper Deck License Agreements, including in correspondence to Upper Deck dated December 1, 2009 and January 28, 2010. Upper Deck has not performed these obligations and remains in default of the Upper Deck License Agreements.

## CLAIM I
### (Lanham Act, § 1114)

46. MLBP repeats and realleges the allegations set forth in paragraphs 1-45 above with the same force and effect as if set forth fully herein.

47. Upper Deck is infringing the MLB Entities' registered trademarks in connection with Upper Deck's unauthorized distribution, marketing, and sale of the 2009 Signature Stars Series, 2009 Ultimate Collection Series, and 2010 Unauthorized Series I sets of trading cards. Upper Deck's actions: (a) are likely to cause confusion or mistake or to deceive the relevant consuming public; (b) are likely to cause consumers and the public to mistakenly believe that the MLB Entities have manufactured, sponsored, authorized, or licensed Defendants' products for sale and/or that Defendant's products are being distributed by an authorized distributor; and (c) are likely to damage the reputation and goodwill previously established by the MLB Entities in authorized products bearing the MLB Marks. The foregoing acts of Upper Deck constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

48. Upper Deck's activities as described above have been willful, wanton, and in deliberate disregard of the MLB Entities' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on the MLB Entities' goodwill.

49. The activities of Upper Deck complained of herein have caused and unless restrained and enjoined by the Court, will continue to cause irreparable harm, damage, and injury to the MLB Entities, for which they cannot be adequately compensated at law.

50. The activities of Upper Deck complained of herein have damaged the MLB Entities in an amount that is as yet undetermined.

## CLAIM II
### (Lanham Act, §1125(a))

51. MLBP repeats and realleges the allegations set forth in paragraphs 1-50 above with the same force and effect as if set forth fully herein.

52. Upper Deck's use of the MLB Marks, including, without limitation, the MLB Uniform Trade Dress and the MLB Cap and Helmet Logos, in connection with Upper Deck's unauthorized trading cards is likely to cause confusion, mistake or deception as to the source or origin of such trading cards, and is likely to cause consumers to draw the false impression that Upper Deck and/or its trading cards are associated with, authorized, endorsed or sponsored by, or that Upper Deck is a sponsor or licensee of, MLBP, Major League Baseball, and/or the MLB Entities.

53. The acts of Upper Deck described above constitute the use in commerce of false designations of origin, and false or misleading descriptions of fact or false and misleading representations of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## CLAIM III
### (Lanham Act, §1125(c))

54. MLBP repeats and realleges the allegations set forth in paragraphs 1-53 above with the same force and effect as if set forth fully herein.

55. The MLB Marks are famous and were famous long prior to Upper Deck's unauthorized use of such marks within the meaning of 15 U.S.C. § 1125(c).

56. Upper Deck's actions as described above constitute dilution of the distinctive quality of the famous and distinctive MLB Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

## CLAIM IV
### (Unfair Competition)

57. MLBP repeats and realleges the allegations set forth in paragraphs 1-56 above with the same force and effect as if set forth fully herein.

58. Upper Deck's actions as described above constitute unfair competition in violation of MLBP's rights under the common law of the State of New York.

## CLAIM V
### (Common Law Trademark Infringement)

59. MLBP repeats and realleges the allegations set forth in paragraphs 1-58 above with the same force and effect as if set forth fully herein.

60. Upper Deck's actions as described above constitute trademark infringement under the common law of the State of New York.

## CLAIM VI
### (New York General Business, §360-1)

61. MLBP repeats and realleges the allegations set forth in paragraphs 1-60 above with the same force and effect as if set forth fully herein.

62. Upper Deck's actions as described above cause a likelihood of dilution of the distinctive quality of the MLB Marks, in violation of New York General Business Law § 360-l.

## CLAIM VII
### (Breach of Contract)

63. MLBP repeats and realleges the allegations set forth in paragraphs 1-62 above with the same force and effect as if set forth fully herein.

64. The Upper Deck License Agreements are valid and binding agreements.

65. MLBP has duly performed all of its obligations, if any, under the Upper Deck License Agreements.

66. By using the MLB Marks in connection with its trading cards, Upper Deck has breached the Upper Deck License Agreements.

67. By failing to pay sums due under the Upper Deck License Agreements and perform other obligations under those Agreements, Upper Deck has breached those Agreements.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendant as follows:

1. That Upper Deck and its manufacturers, agents, servants, representatives, employees, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, temporarily, preliminarily, and permanently, from using the MLB Marks, including without limitation the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, and any other marks confusingly similar to the foregoing marks, on any unauthorized product, including the (i) 2009 Signature Stars Series, (ii) 2009 Ultimate Collection Series, and (iii) 2010 Unauthorized Series I sets of trading cards.

2. That Upper Deck and its manufacturers, agents, servants, representatives, and employees, and anyone in active concert and participation with them, including without limitation Upper Deck's distributors, be ordered to immediately recall from all channels of distribution all quantities of the unauthorized (i) 2009 Signature Stars Series, (ii) 2009 Ultimate Collection Series, (iii) 2010 Unauthorized Series I sets of trading cards, and (iv) any other unauthorized product or advertising or promotional materials bearing the MLB Marks, including without limitation the MLB Uniform Trade Dress and MLB Cap and Helmet Logos.

3. That all unauthorized merchandise, signs, point of purchase displays and materials, boxes, packaging, wrappings, catalogs, decals, flyers, brochures, or other goods or printed matter or advertising or promotional materials bearing the MLB Marks, including without limitation the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, any other marks confusingly similar to the foregoing marks, be delivered up for destruction or other disposition at Plaintiff's sole discretion, including the unauthorized (i) 2009 Signature Stars Series, (ii) 2009 Ultimate Collection Series, and (iii) 2010 Unauthorized Series I sets of trading cards.

4. That Upper Deck be directed to file with the Court and serve upon Plaintiff, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which Upper Deck has complied with the provisions set forth in Paragraphs 1 through 3 above.

5. That Upper Deck be directed to account to Plaintiff for all gains, profits, and advantages derived from Upper Deck's wrongful acts, together with interest therein.

6. That Upper Deck pay to MLBP any damages sustained by MLBP by reason of Upper Deck's wrongful acts in an amount to be determined at trial, together with interest therein.

7. That as exemplary damages MLBP recover from Upper Deck three times the amount of Upper Deck's profits or MLBP's damages, whichever is greater, for willful infringement and dilution.

8. That Upper Deck be ordered to pay punitive damages in an amount to be determined at trial as a result of its willful and wanton conduct.

9. That MLBP recover its reasonable attorneys' fees from Upper Deck, together with the costs of this action.

10. That the Court determine this to be an "exceptional case" within the meaning of 15 U.S.C. § 1117 and that the Court award MLBP its reasonable attorneys fees.

11. That MLBP be granted such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 31, 2010

PROSKAUER ROSE LLP

By: Brendan J. O'Rourke (BO-2351)
Adam D. Siegartel (AS-6947)
Alexander Kaplan (AK-4207)
Patrick J. Dempsey (PD-8372)
1585 Broadway
New York, NY 10036
(212) 969-3000
Fax: (212) 969-3671
email: borourke@proskauer.com

*Attorneys for Plaintiff Major League Baseball Properties, Inc.*