difference between licensed and unlicensed trading cards. (Id. at 394.) When Ms. Hale selected the cards for the monthly "collector's club" sets, Ms. Hale primarily was concerned with providing a variety of cards. (Id. at 395.) Defendant Revels decided which cards Ms. Hale could select for the monthly "collector's club" sets. (Id. at 375-76.) Defendants used the "collector's clubs" to sell "surplus" and "remnant[]" cards. (Id. at 379.) The Court infers from this evidence that Ms. Hale has no idea what cards she placed in the "collector's clubs," and that unlicensed cards constituted much more that 7.3 percent of the cards that Defendants sold in the "collector's clubs."

Because Ms. Hale's testimony that only 7.3 percent of the cards she placed in the "collector's clubs" were unlicensed is not reliable, Mr. Gentle's calculations based upon that figure also are not reliable. Also, even if only 7.3 percent of the cards were infringing, the Court would add the entire sales price to its calculation of Defendants' profits because the evidence in the record demonstrates that the infringing cards induced the sales of the "collector's clubs." The Court thus rejects Mr. Gentle's fifth deduction.

Mr. Gentle's sixth deduction is $5,829.00 for Defendants' costs for preparing the "Sportscard Forecaster Newsletter." (Defs.' Ex. 730 at 10.) The "Sportscard Forecaster

Newsletter" is the newsletter that Defendants use to advertise their "collector's clubs." (Tr. at 488-89.) Mr. Gentle concluded that Defendants' total cost of preparing the "Sportscard Forecaster Newsletter" was $79,853.00. (Id.; Defs.' Ex. 730 at 10.) Mr. Gentle only deducted 7.3 percent of the total cost of preparing the newsletter because Mr. Gentle believed that only 7.3 percent of the cards in the "collector's club" card sets infringed on Plaintiffs' trademarks. (Tr. at 488-89.)

The Court permits a deduction for the entire amount of Defendants' production costs of the "Sports Forecaster Newsletter" because the publications' sole purpose is to advertise Defendants' "collector's clubs." Because the Court permits Plaintiffs' to recover all of the revenue that Defendants generated from the "collector's clubs," the Court permits Defendants to deduct all of their expenses for producing the "Sports Forecaster Newsletter." The Court thus deducts $79,853.00 from Mr. Phillips' calculation of Defendants' profits.

### 3. Summary

The Court awards Plaintiffs $247,965.00 in monetary relief. Under § 1117(b) of the Lanham Act, the Court must award treble damages because Defendants counterfeited

Plaintiffs' registered trademarks unless the Court finds that extenuating circumstances exist. 15 U.S.C.A. § 1117(b); Babbit, 38 F.3d at 1183. The rationale for treble damages is that simple damages will "under-deter" the counterfeiter. Louis Vuitton v. Lee, 875 F.2d 584, 588 (7th Cir. 1989). The "extenuating circumstances" exception is "extremely narrow." Levis Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997). Courts, however, should not award treble damages in an unjust manner and always are bound by principles of equity. Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 621 ("awards [under 15 U.S.C.A. § 1117(b)] are never automatic and may be limited by equitable considerations").

Here, the Court believes that an accounting for profits alone is insufficient to deter adequately Defendants, but that treble damages are excessive. Defendants are a small business and possess limited financial resources. Additionally, Plaintiffs' only registered nine trademarks for the trading card market. (Finding of Fact No. 165.) These registrations only existed for a small part of the time period that Defendant infringed on Plaintiffs' trademarks. (Id.) Only a small portion of Defendants' misconduct thus falls under the definition of counterfeiting. 15 U.S.C.A. § 1116(d)(1)(B). The Court therefore concludes that double damages instead of treble damages constitute the just amount of damages in this

AO 72A

case. Consequently, the Court orders Defendants to pay Plaintiffs $495,930.00.

### B. Injunctive Relief

Section 34 of the Lanham Act provides that a court "shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable" for remedying infringement of a plaintiff's trademark. 15 U.S.C. § 1116 (1994).[13]

This section codifies the traditional remedy for infringement at common law, providing injunctive relief in virtually all cases in which a plaintiff proves unfair competition:

> It is difficult to imagine an unfair competition case in which damages are adequate to remedy the problem of defendant's continued acts. If an injunction were denied, the court would be telling plaintiff to sit by and watch defendant continue to

---

[12] The Court finds that Defendant Revels participated "actively and knowingly" in the infringement in this case. Babbit, 38 F.3d at 1183. The Court thus concludes that Plaintiffs may hold Defendant Revels personally liable jointly and severally with the other defendants. Id.; Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1474 (11th Cir. 1991).

[13] Injunctive relief also is appropriate under the anti-dilution statutes, the Deceptive Trade Practices Act, and the common law. See 15 U.S.C. § 1125(c); O.C.G.A. §§ 10-1-373(a) and 10-1-451(b); Hagan & Dodd Co. v. Rigbers, 57 S.E. 970, 970-71 (Ga. Ct. App. 1907) ("Unquestionably, a court of equity has jurisdiction to give affirmative equitable relief in all cases of the fraudulent use of trade-marks, trade names or devices").

violate the law and infringe upon plaintiff's rights until such time as plaintiff decided to sue again for money damages as compensation for the past injury incurred. Thus, an injunction is the standard remedy in unfair competition cases.

2 McCarthy, supra, § 30:2, at 30-6.

Because injunctive relief against the use of confusingly similar marks promotes the principal purpose underlying trademarks, permitting consumers to identify products and services without being confused or deceived, Plaintiffs clearly are entitled to an injunction against Defendants' unauthorized use of Plaintiffs' trademarks. See Decatur Fed. Sav. & Loan Ass'n v. Peach State Fed. Sav. and Loan Ass'n, 203 U.S.P.Q. 406, 415 (N.D. Ga. Dec. 29, 1978).

Because Defendants were on notice, and repeat offenders, the Court grants a broader injunction than it otherwise might grant. When a defendant comes too close to a mark initially, it has an obligation to distance itself further to avoid confusion:

> Even if [the infringer] originally would have been entitled to use the marks, we hold that the unqualified injunction against their use is justified by [the infringer's] history of improper behavior. An injunction can be therapeutic as well as protective. In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable. The sweep of equitable discretion is at least this broad.

Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,

549 F.2d 368, 390 (5th Cir. 1977). See also Ambrit, 812 F.2d at 1547-48 (affirming injunction against infringer's use of polar bear designs on particular products even though plaintiff did not have exclusive rights to all such designs); Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 705-06 (5th Cir. 1981) (noting discretion to enjoin use of designs which, standing alone, would not constitute trade dress infringement).[14] Thus, the Court enters an injunction preventing Defendants from further advertising, sale and distribution of infringing trading cards, or other infringement of Plaintiffs' trademark rights. See National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc., 532 F. Supp. at 664 (extending injunction not only to "full official colors of an NFL member club but also jerseys which use the dominant color of an NFL member club").

---

[14] Courts in this Circuit and others long have held that one-time infringers may be required to keep a "safe distance" from future infringement. See Howard Johnson Co. v. Khimani, 892 F.2d at 1517 ("[Infringers] must do more than see how close they can come with safety to that which they are enjoined from doing.") (quoting Eskay Drugs, Inc. v. Smith, Kline & French Labs., 188 F.2d 430, 432 (5th Cir. 1951)); Independent Nail & Packing Co. v. Stronghold Screw Prods., Inc., 215 F.2d 434, 436-37 (7th Cir. 1954) ("safe distance"); Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th Cir. 1930); Aurora Prods. Corp. v. Schisgall Enters., Inc., 176 U.S.P.Q. 184, 188 (S.D.N.Y. 1972) ("higher standard of conduct").

C. Punitive Damages

Punitive damages, although not available under the Lanham Act, are authorized under Georgia law for torts, such as unfair competition, in situations involving "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care that would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1 (1994); see First Union Nat'l Bank v. Cook, 477 S.E.2d 649, 655 (Ga. Ct. App. 1996) ("evidence of a conscious and deliberate disregard of the interests of others that may be called willful or wanton will support punitive damages."); see also Imagineering, Inc. v. Van Klassens, Inc., 53 F.3d 1260, 1265-66 (Fed. Cir. 1995) (affirming award of punitive damages for unfair competition under New York law); United Feature Syndicate, Inc. v. Sunrise Mold Co., 569 F. Supp. 1475, 1481 (S.D. Fla. 1983) (awarding punitive damages under Florida unfair competition law); Five Platters, Inc. v. Purdie, 419 F. Supp. 372, 383 (D. Md. 1976) (awarding punitive damages under Maryland law).

The Court, however, declines to award punitive damages in this case for two reasons. First, the Court's award of an accounting of profits adequately compensates Plaintiffs. Second, the Court's doubling of Defendants' profits adequately deters Defendants from engaging in similar

107

activity.

### D. Attorneys' Fees

Under section 35(b) of the Lanham Act, the Court must award attorneys' fees "unless the court finds extenuating circumstances." 15 U.S.C.A. § 1117(b). The "extenuating circumstances" exception is "extremely narrow." Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997); see also Louis Vuitton, 875 F.2d at 590 (exception is limited to cases of extreme personal economic hardship). Defendants have the ability to pay an award of attorneys' fees. The Court therefore orders Defendants to pay Plaintiffs' reasonable attorneys' fees associated with prosecuting this case.

### E. Costs

Costs routinely are awarded to successful plaintiffs in trademark counterfeiting, infringement and unfair competition cases. See 15 U.S.C. § 1117(a) (1994) (authorizing award of costs); Fed. R. Civ. P. 54(d)(1) ("Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be awarded as of course to the prevailing party unless the Court otherwise directs"); Bowmar Instrument Corp. v. Continental Microsystems, Inc.,

497 F. Supp. 947, 961 (S.D.N.Y. 1980) (costs are "one of the routine elements of a prevailing plaintiff's recovery" in Lanham Act case). Defendants must pay Plaintiffs' costs associated with this litigation.

IV. Conclusion

ACCORDINGLY, the Court **ORDERS**:

1. Defendants and their officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, are permanently enjoined from engaging in any of the following acts:

a. Selling, distributing, promoting, advertising or marketing trading cards not licensed by Plaintiffs and bearing Plaintiffs' trademarks, including names, logos, uniform designs or team colors, or any other designs which are a colorable imitation of, or similar to, Plaintiffs' trademarks;

b. Using any trademark or trade dress in any form or manner that would tend to identify or associate the Defendants' goods or services with Plaintiffs, or otherwise tend to confuse the consuming public as to the source, origin, sponsorship or affiliation of such goods or services, on goods not licensed by Plaintiffs;

c. Otherwise infringing Plaintiffs' trademarks, including its registered marks;

d. Otherwise engaging in unfair competition with Plaintiffs; and

e. Using any colorable imitation of Plaintiffs' trademarks in connection with the marketing, sale, distribution, promotion, advertising, identification or any other matter in connection with any product not licensed by Plaintiffs;

2. Within thirty (30) days after the entry of judgment, Defendants shall surrender to Plaintiffs for destruction those cards subject to this Order in Defendants' possession, custody or control;

3. Within thirty (30) days after the entry of judgment, Defendants shall file with the Court and serve on Plaintiffs' attorneys a report in writing under oath setting forth the actions taken by Defendants to comply with the terms;

4. Defendants are hereby ordered to pay to Plaintiffs the amount of $495,930.00 in monetary relief; and

5. Defendants shall pay Plaintiffs' reasonable attorneys' fees to be stipulated by the parties. In the event that the parties cannot agree on an award of reasonable attorneys' fees within thirty (30) days from the

entry of judgment, Plaintiffs shall submit a fee petition and affidavit without further hearing.

6. Defendants shall pay Plaintiffs' reasonable costs associated with this litigation.

IT IS SO ORDERED, this the __2nd__ day of April, 1999.

_____
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev. 8/82)

AO 450 (Rev. 5/85) Judgment in a Civil Case

FILED IN CLERK'S OFFICE
U.S.D.C. - Rome

APR 2 - 1999

# United States District Court

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

NORTHERN DISTRICT OF GEORGIA

NBA PROPERTIES, INC., a New York Corporation,
and NATIONAL FOOTBALL LEAGUE PROPERTIES, INC.,
a California Corporation,
                 Plaintiffs

**JUDGMENT IN A CIVIL CASE**

V.

DAHLONEGA MINT, INC., a Georgia Corporation,
d/b/a Chattanooga Coin & Sportscards,
Chattanooga Coin Co., Chattanooga Coin, DM
Inc., and DM Corp., LEWIS REVELS, an
individual, and MARY REVELS, an individual,
                 Defendants.

CASE NUMBER: 4:97-CV-0208-HLM

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Defendants and their officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, are permanently enjoined from engaging in any of the following acts:

    a. Selling, distributing, promoting, advertising or marketing trading cards not licensed by Plaintiffs and bearing Plaintiffs' trademarks, including names, logos, uniform designs or team colors, or any other designs which are a colorable imitation of, or similar to, Plaintiffs' trademarks;

    b. Using any trademark or trade dress in any form or manner that would tend to identify or associate the Defendants' goods or services with Plaintiffs, or otherwise tend to confuse the consuming public as to the source, origin, sponsorship or affiliation of such goods or services, on goods not licensed by Plaintiffs;

    c. Otherwise infringing Plaintiffs' trademarks, including its registered marks;

    d. Otherwise engaging in unfair competition with plaintiffs; and

    e. Using any colorable imitation of Plaintiffs' trademarks in connection with the marketing, sale, distribution, promotion, advertising, identification or any other matter in connection with any product not licensed by Plaintiffs;

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiffs recover of the Defendants the sum of FOUR HUNDRED NINETY-FIVE THOUSAND, NINE HUNDRED THIRTY AND NO/100 DOLLARS ($495,930.00) and reasonable costs and attorneys' fees.

April 2, 1999
Date

LUTHER D. THOMAS
Clerk

Vivian VanLandingham
(By) Deputy Clerk