UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAJOR LEAGUE BASEBALL,
PROPERTIES, INC.,

    Plaintiff,

v.

THE UPPER DECK COMPANY, LLC,

    Defendant.

Civil Action 10-CV-732-RWS
ECF Case

**DECLARATION OF HOWARD SMITH IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

---

I, Howard Smith, declare under penalties of perjury as follows:

1. Since 1998 I have been employed by Major League Baseball Properties, Inc. ("MLBP") and for approximately the last ten years I have served as Senior Vice President, Licensing. I am responsible for, among other things, overseeing MLBP's domestic licensing programs, and based on such responsibilities have personal knowledge of the matters set forth herein. I submit this declaration in support of the application by MLBP for a temporary restraining order.

2. This case involves the unauthorized manufacture, distribution, advertising, promotion, offering for sale, and sale by defendant The Upper Deck Company, LLC ("Upper Deck") of baseball trading cards prominently depicting certain trademarks, trade dress, and other logos (collectively, "MLB Marks") associated with and owned and controlled by MLBP and the thirty Major League Baseball Clubs (collectively, the "MLB Clubs," and each a "Club"). Defendant is a former licensee of MLBP that was authorized to produce and distribute baseball trading cards, among other products, featuring those same MLB Marks. Without authorization, and after expiration of such grant of rights, Upper Deck has nevertheless produced and is selling at least three lines of trading cards that use the MLB Marks prominently throughout the entire

1

lines, in such a way that will undoubtedly cause consumers to mistakenly believe that the unauthorized trading cards are officially licensed goods of MLBP and the Major League Baseball clubs. Upper Deck's unauthorized and infringing use is also in blatant breach of its obligations that survive expiration of the relevant MLBP/Upper Deck license agreements, which prohibit Upper Deck from using such trademarks, trade dress, and logos without MLBP's consent after expiration of those license agreements.

**MLBP, The MLB Marks, And MLBP's Extensive Licensing Program**

3. MLBP is indirectly owned by the MLB Clubs and is a licensee of and acts as licensing agent for each of the MLB Clubs, the Office of the Commissioner of Baseball, and their respective affiliated entities (collectively, the "MLB Entities"). MLBP is responsible for, among other things, licensing the manufacture, production, distribution, offering for sale, sale, and promotion of goods and services bearing the intellectual property of the MLB Entities and for the protection and enforcement of rights in such intellectual property.

4. Each of the MLB Clubs owns and uses its MLB Marks, including without limitation, the trademark names under which it competes, along with a variety of other names, trademarks, service marks, logos and designs, as well as its distinctive trade dress, including, without limitation, the unique and inherently distinctive color combinations, striping, and/or positioning of the Club names, logos and other elements (such as geographic designations) used on the MLB Clubs' uniforms (sometimes referred to herein separately as the "MLB Uniform Trade Dress"). In the case of trading cards, these uniforms are depicted during a wide variety of settings, including during games, during practices, in Spring Training, etc. — more generally, during the various times when players wear their uniforms. The MLB Marks include not only

the MLB Uniform Trade Dress, but also individual MLB Club logos used among other things on baseball caps and helmets (sometimes referred to herein as "MLB Cap and Helmet Logos").

5. MLBP has licensed hundreds of entities the right to use the MLB Marks, including without limitation the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, on or in connection with a wide variety of authorized goods and services. As a result of MLBP's licensing efforts, the combined domestic wholesale sales of Major League Baseball merchandise bearing the MLB Marks over the past ten years alone have exceeded $10 billion dollars.

6. The MLB Marks have also been marketed and promoted extensively for many years on television, in major magazines and newspapers, on radio, and via the Internet, and have been the subject of extensive unsolicited media coverage across the United States and internationally. In addition, the MLB Entities and MLBP spend millions of dollars annually in advertising and promoting goods and services identified by the MLB Marks, including the Major League Baseball games attended by millions of fans annually at ballparks throughout North America and enjoyed by millions more fans as a result of radio and television broadcasts and transmissions of such games via the Internet or other interactive media.

7. As a result of the substantial use and promotion of the MLB Marks for many years in connection with baseball-related goods and services and as part of an extensive licensing program on a wide variety of goods and services relating to and promoting the MLB Clubs, the MLB Marks, including without limitation the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, have become famous among the relevant consuming public and possess significant goodwill of great value to the MLB Entities.

### The Baseball Trading Card Business

8.  The trading card business is a highly visible one for MLBP and has been for decades. Over the past decade, MLBP's revenues from baseball card licensing is well over $75 million.

9.  Notwithstanding the importance of trading cards, the overall trading card business for the four major sports (baseball, football, basketball, and hockey) has been steadily declining for many years, falling from approximately $1 billion at its height to approximately $200 million at present. In addition, the share within the trading card sector for Major League Baseball licensed cards has decreased over the years from approximately 75%-80% in the mid-1980's to roughly 15-20% of the total business (including non-sports trading cards) as of today.

10. As a result, in MLBP's reasoned judgment, having an excessive number of trading card licensees diminishes and dilutes the value of the trading card business for MLBP. MLBP has therefore made the strategic business decision to reduce the number of companies that are authorized and licensed to manufacture and sell complete sets of official MLBP trading cards.

11. Specifically, MLBP has decided that it is currently most beneficial to enter into an exclusive multi-year licensing deal with just one trading card manufacturer and distributor, namely, The Topps Company, Inc. ("Topps"). Topps has become the "Official Baseball Card of Major League Baseball," and under this exclusive arrangement, Topps has the exclusive right to use the MLB Marks on trading cards for retail distribution beginning on January 1, 2010.

### Upper Deck And Its Contractual Relationship With MLBP

12. Upper Deck manufactures and distributes, among other things, sports trading cards throughout the United States. Upper Deck began producing Major League Baseball trading cards approximately twenty years ago. To the best of my knowledge, through the end of

4

2009, Upper Deck never previously attempted to produce baseball trading cards without a license from MLBP, and such licenses always included, among other provisions, a specific surviving acknowledgment from Upper Deck regarding the proprietary nature of MLB Marks and an agreement not to use such MLB Marks without MLBP's consent. Not only were such provisions always included in the Upper Deck licenses, but to my knowledge Upper Deck never negotiated changes to these provisions, despite Upper Deck negotiating at least six or seven trading card licenses during this approximate 20-year period.

13. The most recent license agreement between MLBP and Upper Deck granting the right to produce and distribute trading cards in the United States became effective in 2006 and expired on October 31, 2009 (the "Upper Deck License" or "License"). The License had a two month sell-off period that concluded on December 31, 2009. In the License, MLBP granted Upper Deck the right to produce trading card sets bearing the MLB Marks on a free-standing basis, and as part of the MLB Uniform Trade Dress worn by Major League Baseball players in the images depicted therein (such players being featured under license from the Major League Baseball Players Association [the "Players Association"]). A redacted version of the Upper Deck License that includes the relevant passages is attached as Exhibit 1 to this Declaration.

14. In the Upper Deck License, Upper Deck expressly agreed that it would make no use of the MLB Marks (including, without limitation, the MLB Uniform Trade Dress) upon the expiration of the License without the prior written consent of MLBP. Paragraph 15.A of the License provides as follows:

> Licensee represents that it has not made any unauthorized use of MLB Marks, including, without limitation, those contained in Licensor's Official Style Guide, and acknowledges that a license from the MLB Entities and/or Licensor is required in order to use such MLB Marks or create derivatives thereof, and agrees that it will during or after the License Period make no use of any such MLB Marks, other than as

provided in this Agreement, without the prior written consent of Licensor or the appropriate individual MLB Entity.

(The "MLB Marks" [in ¶ 7(C)(i)(c)] are defined under the Upper Deck License as encompassing a list of specifically defined "Licensed Properties" as well as "any other names, trademarks, service marks, trade dress and copyrights, including word marks, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols, designs, likenesses and visual representations owned, controlled or cleared for use by or on behalf of and/or applied for in or registered with the U.S. Patent and Trademark Office . . . or any combination or derivative of same, by Licensor or any of the MLB Entities" [as defined in the License Agreement])

15. The Upper Deck License also provided in ¶ 15.A that (a) Upper Deck specifically acknowledges the proprietary nature of the MLB Marks, (b) the prohibition on use of the MLB Marks "includes, but is not limited to, trademark, fair, incidental, descriptive or functional uses," and (c) "Derivative Works" created by arranging, modifying, or altering the MLB Marks are owned by MLBP or its licensors and require a license for their use.

16. In paragraph 12 of the License, Upper Deck explicitly represented that it "recognizes the great value of the publicity and goodwill associated with the MLB Marks and, in such connection, acknowledges that such goodwill belongs exclusively to Licensor . . . and that the MLB Marks have acquired a secondary meaning in the minds of the purchasing public." Upper Deck also specifically agreed (at ¶ 13.A) that "[i]t will not acquire any rights in the Licensed Properties as a result of its use" under the License, and that "all uses of the Licensed Properties or MLB Marks shall inure to Licensor's benefit."

17. Under the License (at ¶ 18), Upper Deck also agreed that a breach of any of these provisions (or any other provision in the License) would result in "immediate and irreparable damage" to MLBP.

6

18. The Upper Deck License (at ¶ 31) expressly instructs that each of these provisions cited above survive expiration of the License. The surviving nature of such provisions is also referenced in the various provisions themselves (for example, in ¶ 15.A Upper Deck agrees to make no use of the MLB Marks "after the License Period," and in ¶ 18 Upper Deck acknowledges that breaching the License following expiration would result in "immediate and irreparable" injury).

**MLBP's Quality Control Rights Under The Upper Deck License**

19. The Upper Deck License explicitly provides (at ¶ 10.A) that MLBP has "absolute approval ... of the Licensed Products and all packaging at all stages of the development thereof." Under the License, Upper Deck was obligated to furnish to MLBP for written approval "designs of each Licensed Product and samples of each Licensed Product before its manufacture, sale, promotion, advertisement, or distribution, whichever first occurs ...." This is a critically important right and one that MLBP has rigorously exercised during the term of the Upper Deck License. Before merchandise licensed under the Upper Deck License has been released to the marketplace, MLBP has carefully reviewed that merchandise in order to ensure that Upper Deck's trading cards and use of the MLB Marks, including the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, were in compliance with the terms of the Upper Deck License and MLBP's branding guidelines.

**Upper Deck's New And Unlicensed Trading Card Sets Feature MLB Marks**

20. Although the Upper Deck License has expired, and despite the unequivocal License provisions just discussed, Upper Deck is prominently using without MLBP's authorization the MLB Marks, including the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, in connection with at least three different brand-new trading card sets.

I understand that the first two sets, Signature Stars 2009 (the "2009 Signature Stars Series") and Ultimate Collection 2009 (the "2009 Ultimate Collection Series") (collectively, the "2009 Unauthorized Series") were shipped to Upper Deck's distributors during this past week of January 25. I understand that the distributors have in the past couple of days started delivering both of the 2009 Unauthorized Series to their retail store accounts. I understand that the third unauthorized Upper Deck set, Series 1 2010 (the "2010 Unauthorized Series 1"), is now in the possession of Upper Deck's distributors, and is due to be shipped imminently to retail store accounts.

21. The two 2009 Unauthorized Series sets and the 2010 Unauthorized Series 1 cards have just come to the attention of MLBP, and even as of the present time, MLBP has only seen small amounts of each of those three unauthorized sets. On January 27 we first saw the 2009 Signature Stars Series and 2009 Ultimate Collection Series, and on January 29 we first saw the 2010 Unauthorized Series 1 cards. Unfortunately, in the case of the 2009 Signature Stars Series and 2009 Ultimate Collection Series cards, MLBP had no opportunity to review what these cards would look like before their distribution to distributors and retail store accounts because Upper Deck is no longer a licensee of MLBP and MLBP did not have the benefit of exercising quality control over Upper Decks products. For the same reason, MLBP had no opportunity to review the 2010 Unauthorized Series 1 cards before distribution to distributors.

22. Although MLBP knew that Upper Deck had a license from the Players Association to use the Major League Baseball players' images, MLBP did not know until Upper Deck released the 2009 Unauthorized Series and 2010 Unauthorized Series 1 cards for distribution that Upper Deck would depict the players with the use of MLB Marks and thus blatantly infringe the intellectual property rights of MLBP and the MLB Clubs, and that Upper

8

Deck would violate its surviving obligations under its prior License Agreements by displaying the MLB Marks, including the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, without MLBP's express consent. When Upper Deck was an MLBP licensee, the license from the Players Association to Upper Deck did not authorize Upper Deck to display any of the MLB Marks, including but not limited to the MLB Uniform Trade Dress or MLB Cap and Helmet Logos, and the current Players Association license to Upper Deck would also not so authorize. Nor could it, as the MLB Marks, including the MLB Uniform Trade Dress and MLB Cap and Helmet Logos, are owned by and exclusively proprietary to the respective MLB Entities.

**Upper Deck's Licensed And Unlicensed Trading Cards Look The Same**

23. Last year, when it was licensed by MLBP, Upper Deck released a set of genuine and authorized trading cards also called Series 1 (the "2009 Authorized Series 1"). A side-by-side comparison of Upper Deck's final set of licensed 2009 Authorized Series 1 trading cards and Upper Deck's new 2010 Unauthorized Series 1 trading cards reveals no sufficiently meaningful changes that would lead a consumer to realize that Upper Deck's new trading cards are no longer licensed by MLBP. Attached as Exhibit 2 are representative side-by-side comparisons that illustrate this fact.

24. For example, the 2009 Authorized Series 1 trading cards in Exhibit 2 all feature Major League Baseball players in their respective Club uniforms bearing the distinctive MLB Uniform Trade Dress. The same holds true for Upper Deck's new 2010 Unauthorized Series 1 trading cards.

25. Moreover, both the licensed 2009 Authorized Series 1 and unlicensed 2010 Unauthorized Series 1 sets of Upper Deck cards prominently display MLB Cap and Helmet Logos fully visible on the players' headwear, other MLB Marks on the jersey fronts and backs and sleeves, as well as the MLB Uniform Trade Dress as a whole.

26. Although Upper Deck may have attempted to minimally obscure the MLB Marks on certain of its unauthorized cards through its selection of particular types of action photos, the MLB Marks are still clearly visible and readily identifiable, including the MLB Uniform Trade Dress, in these cards (including as well on the boxes for the sets and the wrappers for the card packs). Moreover, to the extent that trademarks are obscured, that does not in any way serve to distinguish the licensed and unlicensed cards, because Upper Deck's previously-licensed cards included obscured trademarks in the exact same way, namely, through the use of action shots that partially obscure the MLB Marks featured on the players' uniforms (*e.g.*, swinging a bat; pitching a baseball; etc.).

27. Furthermore, the wrappers for the individual card packs and the cover for the trading card box for the 2010 Unauthorized Series 1 cards bear a striking resemblance to, and in some respects are virtually identical to, the overall commercial impression of the previously licensed 2009 Authorized Series 1 cards, in that they feature the same player in the same Major League Baseball uniform – namely Derek Jeter in the iconic New York Yankees home pinstripe uniform – against a virtually similar radiating design. *See* Exhibit 2.

28. This, together with the other features of the packaging and the trading cards themselves, makes the overall impression of the 2010 Unauthorized Series 1 cards virtually indistinguishable from the previously-licensed 2009 Authorized Series 1 cards. As such, consumers who purchase and collect baseball cards are likely to mistakenly believe that the unlicensed 2010 Unauthorized Series 1 set is a continuation of the previously-licensed 2009 Authorized Series 1 set.

29. Simply put, for these and other reasons, the changes between Upper Deck's licensed and unlicensed trading cards are not sufficiently meaningful to allow a consumer to discern that Upper Deck's trading cards are no longer authorized by MLBP.

30. I also do not believe that Upper Deck's new packaging disclaimer ("NOT authorized by Major League Baseball or its Member Teams") is meaningful. These disclaimers on the boxes that display the individual card packs and on the card packs themselves are too small to meaningfully affect consumer perception – they will most likely be ignored completely due to their small size, and to the extent they are even noticed, will quite possibly be misunderstood by bringing attention to the authorization by Major League Baseball and its Member Teams. The likelihood of the disclaimers being ignored is also increased by the fact that because the unauthorized Upper Deck trading card boxes and packs prominently display what the consumer truly values, namely, the MLB Marks – a fact that will be apparent when the consumer is still at least several feet away from the boxes and packages – a consumer is much less likely to be "on the lookout" for, and much more likely to ignore, a disclaimer by the time they are within arms-length of the boxes and packaging. As for the even smaller disclaimers that are included on the backs of the cards themselves, it is again unreasonable to believe that such a disclaimer will be noticed or properly appreciated by trading card purchasers. In any event, consumers will not even have the opportunity to see the tiny disclaimers on the cards themselves until after the cards are purchased.

31. The bottom line is that for approximately 20 years, Upper Deck enjoyed the right under licenses from MLBP to sell baseball trading cards that prominently used and displayed the MLB Marks. During that time, as a direct result of its business relationship with MLBP, Upper Deck benefited from MLBP's enforcement of its rights such that only licensed companies enjoyed the right to use the MLB Marks in connection with baseball trading cards with quality

controlled by MLBP. For legitimate business reasons MLBP decided not to grant a new license to Upper Deck. Notwithstanding, and in clear violation of its ongoing obligations under the License not to use our MLB Marks, Upper Deck has introduced new lines of baseball trading cards that plainly and prominently display the MLB Marks in a way that will lead consumers to believe Upper Deck remains an authorized licensee when it is not.

**Prior MLBP/Upper Deck Correspondence Regarding Upper Deck's Unauthorized Cards**

32. On January 28, 2010, the day after first seeing the 2009 Signature Stars Series and 2009 Ultimate Collection Series cards, MLBP sent a cease-and-desist letter to Upper Deck. In this letter, which is attached as Exhibit 3, MLBP explained that these unauthorized trading card sets featuring and prominently incorporating the MLB Marks breach the Upper Deck License and constitute trademark infringement and other violations in contravention of federal, state, and other laws. The letter further demanded that Upper Deck cease and desist from exploitation of the unauthorized trading cards and any further use of the MLB Marks. The letter also addressed Upper Deck's multiple defaults on its obligations to MLBP to make more than $2 million in payments it owed to MLBP in connection with its use of the MLB Marks and to fulfill numerous affirmative obligations, including with respect to quality control and royalty reporting, among others. These defaults occurred prior to the unauthorized release of the infringing trading cards discussed here.

33. Upper Deck responded to this January 28 letter on January 29. In its letter, Upper Deck denied MLBP's allegations and refused to cease selling its unauthorized trading card sets.

**MLBP Is Being Irreparably Harmed By Upper Deck's Unauthorized Trademark Cards**

34. As discussed above (at ¶ 17), Upper Deck explicitly conceded in the Upper Deck License that its breach of the License would constitute "immediate and irreparable damage" to

MLBP. That state of affairs has now come to pass, and Upper Deck's unauthorized trading cards are greatly harming MLBP, its entire licensing program, and the MLB Clubs in several different ways.

35. First, it is fundamentally important that MLBP be able to control the use of its tremendously famous and valuable MLB Marks, so that MLBP is certain that these properties are not being distorted or negatively impacted in the public eye. As discussed above, the Upper Deck License incorporated extensive "quality control" measures that MLBP vigorously exercised during the terms of that License. Now that the License has expired, however, MLBP is not being afforded any opportunity to exercise quality control, and the perception of the MLB Marks will suffer as a result of Upper Deck's product. Simply put, MLBP's hard-earned reputation and goodwill are being placed in the hands of an unrelated third-party over whom MLBP has no control. By its very nature, that injury is irreparable unless immediately enjoined.

36. Second, MLBP's strategic decision to strengthen demand for its authorized trading cards by eliminating the cluttering effect of multiple licensed trading cards is being undermined by Upper Deck's activities. MLBP for valid business reasons has determined it is in the best interests of its branded products to have an exclusive retail trading card licensee, namely, Topps. By continuing to sell baseball trading cards in a way that creates the overwhelming perception that the Upper Deck cards are officially licensed by MLBP, Upper Deck has damaged the caché of the only validly licensed line of retail MLBP trading cards. In addition, Upper Deck is causing consumer confusion by making consumers mistakenly believe that the Upper Deck cards are genuine cards approved by MLBP. This consumer confusion is exacerbated by the fact that Upper Deck's unauthorized trading cards are distributed by the same

distributors as MLBP's licensed trading cards, and sold and marketed in the same retail and trade channels to the same consumers.

37. Upper Deck's actions unless restrained will also undermine MLBP's long-established licensing programs. MLBP has in good faith negotiated for the benefit of protecting and enhancing its brands and image through a contractual requirement that its licensees will respect MLBP's intellectual property rights by not using them post-termination or expiration without the express consent of MLBP. Unless immediately restrained, Upper Deck's deceptive trading cards threaten to severely undermine MLBP's licensing programs.

38. Upper Deck's actions are particularly injurious to MLBP's exclusive license agreement with Topps and MLBP's decision to move to a single licensor with respect to trading cards generally. MLBP should be able to determine the best way to license its products. MLBP's decision to license its trading card products on an exclusive basis is a reflection of that choice and MLBP should be free from interference by a former licensee using MLB marks without authorization and in violation of MLBP's rights.

39. If MLBP cannot control the use of the MLB Marks on products, its entire licensing program and its ability to decide how best to exploit its most valuable assets are irreparably harmed. If Upper Deck is permitted to market these unauthorized trading cards, the value of an exclusive license for which licensees pay a significant premium to MLBP will be substantially diminished. Exclusive licensees are also willing to undertake a larger marketing and promotional commitment in order to grow and develop, in this case, the game of baseball, in order to increase the value and marketability of the licensee's exclusive right. If MLBP's other current or potential licensors see that MLBP cannot guarantee them exclusivity where that right is bargained and paid for, MLBP will suffer greatly in an amount that cannot be quantified.

40. In sum, Upper Deck's prominent use of the MLB Marks, if permitted, will at the very least threaten and quite possibly destroy MLBP's ability to meaningfully license the MLB Marks in connection with trading cards on an exclusive basis, resulting in a severe and irreparable injury to MLBP's licensing efforts.

I declare under penalties of perjury that the foregoing is true and correct. Executed on January 31, 2010 in Berkeley Heights, New Jersey.

_____
Howard Smith