(iii) such secured party shall not be entitled to complete works-in-process or raw materials used to create the Licensed Products; and

(iv) Licensee shall contractually require that if such secured party wishes to sell the affected Licensed Products upon Licensee's default of such security agreement, then the secured party shall first offer Licensor the opportunity to purchase such inventory at the lesser of the lowest applicable wholesale value therefor (factoring in the age and condition of the inventory) or the lowest "qualified bid". For purposes of this Agreement a "qualified bid" shall be any bona fide, arm's length bid offered <u>other</u> than by a party (1) who Licensor would not approve as a purchaser hereunder, or (2) who is related to or affiliated with Licensee (including, without limitation, a Licensee Affiliate). In the event Licensor does not exercise such option to purchase the inventory, Licensee shall obtain Licensor's written approval of such sale upon at least fifteen (15) Licensor business days' advance written notice to Licensor; it being understood that Licensor may grant or deny approval in its sole discretion:

(a) if approval is denied, Licensor shall be entitled to order the destruction or return of such Licensed Products upon the payment to such secured party by Licensor of the actual manufacturer's cost of such goods factoring in the age and condition of the inventory.

(b) if approval is granted, the sale shall be conditioned upon (1) the payment to Licensor of all Royalties due to Licensor on such sales, based on the terms of this Agreement, within fifteen (15) days from such sale (and any outstanding obligations owed to Licensor, if requested by Licensor), (2) the secured party's carrying of insurance of the type required of Licensee in **Schedule M** hereof prior to consummating such sale, (3) Licensor's approval of said Licensed Products pursuant to Paragraph 10 hereof, (4) the manner of the sale (including, without limitation, Licensed Territory, method of distribution and License Period) complies in all aspects of this Agreement; and (5) the secured party's agreement to indemnify Licensor and each of its affiliates referenced in Paragraph 7(C) hereof from all claims relating to such sale.

T. It has not had and does not have an investment or interest in casinos, any other form of gambling enterprise, or any activity that Licensor or any other Major League Baseball related entity has made unauthorized or which is contrary to official policy of Major League Baseball;

U. With respect to any Licensed Products manufactured outside the Licensed Territory (which shall be allowed pursuant to the terms hereunder), (i) it will take receipt of goods at ports of entry located in the Licensed Territory only, (ii) it will not allow any entity in the Licensed Territory, including but not limited to distributors, wholesalers and retailers, to accept shipment of the Licensed Products from any manufacturer of such Licensed Products based outside the Licensed Territory, and (iii) it will distribute such Licensed Products to third parties, including but not limited to distributors, wholesalers and retailers, from Licensee's principal place of business only or from Licensee's owned and operated warehouses or facilities wherein Licensee has a physical presence;

V. (i) The name identified in **Schedule B** is the corporate name of Licensee, and is reflected as such in all corporate, legal and governmental filings, (ii) Licensee has full power and authority to execute and deliver this Agreement and perform its obligations hereunder (and if a corporation, duly incorporated in the city/state/province/country specified in **Schedule B**); (iii) Licensee

has duly executed and delivered this Agreement; (iv) this Agreement constitutes the legal, valid and binding obligation of Licensee, enforceable against it in accordance with the terms hereof; and (v) Licensee's execution, delivery, and performance of this Agreement does not and will not conflict with, result in the breach of, or constitute a default under any arrangement or agreement to which it is a party or by which it is bound;

W. Except as disclosed pursuant to Paragraph 13(S) above, Licensee has granted to no individual or entity a preference, security interest, or lien in the Licensed Products;

X. It shall inform Licensor promptly and in writing of any default by it under an agreement with a secured lender in which the Licensed Products are implicated and/or any agreement with any affiliate of Licensor; and

Y. It will not commence any proceeding or seek any financial or other form of relief or remedy in a judicial, arbitration, or mediation forum against any Licensor Indemnitee in respect of claims, losses, promises, causes of action, demands, or damages, arising out of (i) the manner in which the Licensor Indemnitees are organized, (ii) the conduct of the Licensor Indemnitees' business including the Licensor Indemnitees' status and role as licensing agents (whether exclusive or non-exclusive) for the Clubs, (iii) Licensor's authority to license the MLB Marks, and (iv) challenges to the validity, legality, and enforceability of this Agreement.

14. APPROVAL OF MANUFACTURER, ETC.: Nothing contained herein may be construed so as to imply endorsement of Manufacturer by Licensor or the Licensor Indemnitees. Licensee shall seek Licensor's written approval of Manufacturer prior to Licensee's engagement of Manufacturer, which approval shall not be unreasonably withheld (it being understood that any ground asserted by the possessor or controller of interest in the utilized Licensed Property shall be deemed reasonable). Any approval of Manufacturer granted by Licensor must be in writing and relates solely to the manufacturing of the Licensed Products and shall not constitute a grant of any right, title or interest in or to the MLB Marks. Licensor hereby reserves the right to terminate in its discretion the engagement of Manufacturer at any time and for any reason. Additionally, Licensor may confiscate goods or samples imported by Licensee or shipped by Manufacturer that bear any of the Licensed Properties and that have not been approved by Licensor.

15. ACKNOWLEDGEMENT OF RIGHTS:

A. Licensee hereby acknowledges the proprietary nature of all MLB Marks and acknowledges that all rights, title and interest to the MLB Marks, including Derivative Works (as defined below) created therefrom, belong to the individual MLB Entities and/or Licensor, as the case may be. For purposes of this Paragraph 15, "Derivative Works" refers to arrangements, modifications and alterations of the MLB Marks, but does not include artwork created by Licensee and not incorporating such Derivative Works which is used in connection with the Licensed Properties on the Licensed Products. Licensee represents that it has not made any unauthorized use of MLB Marks, including, without limitation, those contained in Licensor's Official Style Guide, and acknowledges that a license from the MLB Entities and/or Licensor is required in order to use such MLB Marks or create derivatives thereof, and agrees that it will during or after the License Period make no use of any such MLB Marks, other than as provided in this Agreement, without the prior written consent of Licensor or the appropriate individual MLB Entity. Any use Licensee has made of the MLB Marks or will make of the Licensed Properties has not conferred or will not confer, as the case may be, any rights or benefits upon it whatsoever, and any rights created by such use shall inure to the benefit of the individual MLB Entities and/or Licensor, as the case may be. Licensee further acknowledges that for purposes of this Paragraph 15, "use" includes, but is not limited to, trademark, fair, incidental, descriptive or functional uses.

B.    Licensee also acknowledges that it will not manufacture, distribute or sell any products (other than the Licensed Products or Premium products approved by Licensor), or produce or direct the production of any promotional item (other than as approved by Licensor), utilizing the primary colors of Clubs or Major League Baseball games or events marks or anything closely similar thereto in combination with baseball indicia or the geographic designation of a Club in a manner which is likely to create the impression or actually creates the impression that such products are associated with such Club or Major League Baseball game or event; provided, however, that the foregoing limitation regarding the use of certain colors in combination with the geographic designation of a Club shall not apply to the extent that another professional or college sports team or program has the same geographic designation as such Club and colors identical or closely similar to those of such Club and such use is consistent with other styles of products currently being sold by Licensee pursuant to a license with such professional or college sports team. In addition, Licensee shall not feature, depict or otherwise include any images, pictures, posters, photographs, caricatures or likenesses in a still or moving form (collectively, "Images") (in whole or in part) of current or former players, coaches or managers wearing any item resembling a Major League Baseball uniform or a component of such uniform in any material including, without limitation, a consumer product, advertising, or promotional materials, without obtaining the express written permission of Licensor prior to such depiction. For purposes of this Agreement, jerseys, pants, jackets, caps, helmets, and catchers equipment are considered components of a Major League Baseball uniform. For the avoidance of doubt, the foregoing shall preclude Licensee from, among other things, using any Images that feature a component of a Major League Baseball uniform that is airbrushed, intentionally blocked or covered, or otherwise altered.

C.    Licensee acknowledges and agrees that to the extent the Licensed Products incorporate a design or slogan that is provided or created by Licensor or designed by Licensee for use with Licensor and which is Major League Baseball-themed and capable of being protected under U.S. copyright, trademark, trade dress, misappropriation, dilution, or other similar laws, then, unless otherwise agreed upon in writing, such design or slogan (hereinafter, "MLB Intellectual Property") shall be owned by Licensor and/or the respective MLB Entities. Nothing herein modifies or affects Licensee's obligations under this Agreement to search and clear all intellectual property that it creates or uses and which is not among the Licensed Properties at the time of such use or creation unless, in the case of MLB Intellectual Property, Licensor represents in writing that it has secured and cleared such design or slogan for the intended use.

16.    TERMINATION:

A.    **Immediate Termination:** Licensor shall have the right to terminate this Agreement immediately upon the occurrence of any one or more of the following events (herein called "defaults"):

(i)    If Licensee fails to maintain in full force and effect the insurance specified in **Schedule M** hereof; or

(ii)    If Licensee shall breach any one of the following undertakings set forth in Paragraph 13 hereof: 13(A) through (F), (H) through (K), (R), (T) or (Y); or

(iii)    If Licensee shall undergo a change in majority or controlling ownership; or

(iv)    If Licensee breaches this Agreement and that breach is incapable of complete cure; or

(v) If Licensee is in default of any provision of an agreement with a lender possessing a security interest in the Licensed Products and such default is incapable of complete cure; or

(vi) If Licensee shall breach any other existing, valid agreement with Licensor or any Major League Baseball-affiliated entity and fails to cure such breach pursuant to the terms thereof.

B. **Termination With Cure Period:** Licensor shall have the right to terminate this Agreement upon the occurrence of any one or more of the following defaults, and Licensee's failure to cure such default(s) completely within [Redacted] from Licensee's receipt of notice from Licensor:

(i) If Licensee fails to make any payment due hereunder on the date due, or fails to satisfy any outstanding payment obligation under any other agreement with Licensor, at which time all such monies, together with all other monies owed pursuant to **Schedule K** and **Schedule L** of this Agreement shall become due and payable to Licensor; or

(ii) If Licensee fails to deliver any of the statements hereinabove referred to or to give access to the premises and/or license records pursuant to the provisions hereof to Licensor's authorized representatives for the purposes permitted hereunder; or

(iii) If Licensee is unable to pay its debts to Licensor and/or the Licensor Indemnitees, or makes any assignment for the benefit of creditors or an arrangement pursuant to any bankruptcy law, or files or has filed against it any petition under the bankruptcy or insolvency laws of any jurisdiction, county or place, or shall have or suffer a receiver or trustee to be appointed for its business or property, or be adjudicated a bankrupt or an insolvent. In the event the license granted hereunder is terminated pursuant to this Paragraph 16(B)(iii), neither Licensee nor its receivers, representatives, trustees, agents, administrators, successors and/or assigns shall have any right to sell, exploit or otherwise deal with or in the Licensed Products without the prior written consent of Licensor; or

(iv) If Licensee does not in good faith commence the manufacture of the Licensed Products during the License Period (or the specific date set forth in **Schedule P**, if and as applicable), and to distribute and sell each Licensed Product throughout the Licensed Territory during the License Period (or the specific date set forth in **Schedule P**, if and as applicable), but such default and Licensor's resultant right of termination shall apply only to the specific Licensed Products and/or the specific territory(ies) which or wherein Licensee fails to meet said requirements; or

(v) If Licensee shall discontinue its business as it is now conducted; or

(vi) If Licensee shall breach any of the undertakings set forth in Paragraph 13 hereof, except as otherwise provided in Paragraph 16(A)(ii) above; or

(vii) If Licensee shall breach any of the other terms of this Agreement; or

(viii) If, in the periodic statements furnished pursuant to Paragraph 5 hereof, the amounts owed to Licensor are:

**Redacted**

(ix) If Licensee fails to deliver to Licensor the certificates of insurance required pursuant to Paragraph 8; or

(x) If any governmental agency or court of competent jurisdiction finds that the Licensed Products are defective in any way, manner or form.

C. Licensor's right to terminate this Agreement shall be without prejudice to any other rights which it may have, whether under the provisions of this Agreement, in law or in equity or otherwise. In the event any of these defaults occurs and Licensor desires to exercise its right of termination under the terms of this Paragraph 16, Licensor shall give notice of termination in writing to Licensee.

**Redacted**

, no portion of any prior payments made to Licensor shall be repayable to Licensee. Until payment to Licensor of any monies due it, Licensor shall have a lien on any units of the Licensed Products not then disposed of by Licensee and on any monies due Licensee from any jobber, wholesaler, distributor, sublicensee or other third parties with respect to sales of the Licensed Products. Upon termination or expiration of the term hereof, all rights, licenses and privileges granted to Licensee hereunder shall automatically revert to Licensor and Licensee shall execute any and all documents evidencing such automatic reversion.

Redacted

D. Subject to Licensee not being in default of this Agreement, Licensee shall have the right to terminate this Agreement if Licensor materially breaches Paragraphs 1 (subject to the limitations contained in Exhibit 1, and any other MLB Mark limitations communicated in writing to Licensee by Licensor), Paragraph 7(A) and Schedule P, Exclusivity of this Agreement and Licensor's failure to cure such default(s) completely within fifteen (15) business days from Licensor's receipt of notice from Licensee.

Redacted

17. FINAL STATEMENT UPON TERMINATION OR EXPIRATION: Licensee shall deliver to Licensor, as soon as practicable, following expiration or termination of this Agreement, a statement indicating the number and description of the Licensed Products on hand. Following expiration Licensee may manufacture no more Licensed Products, but, subject to the terms of the following sentence, may continue to distribute its remaining inventory during the period specified in Schedule H (herein defined as the "Sell-Off Period"), subject to the terms of Paragraph 13(P) hereof and payment of applicable Royalties relative thereto. Notwithstanding the foregoing, Licensee shall not manufacture, sell or distribute any Licensed Products (i) after termination of this Agreement by Licensor, (ii) after expiration of the Sell-Off Period, or (iii) upon Licensee's default hereunder pursuant to the terms of Paragraph 16. Furthermore, Licensee shall ensure that the distributors, jobbers and middlemen with whom it deals in respect of the Licensed Products shall not distribute the Licensed Products after the occurrence of any one of the events identified in (i), (ii) or (iii) in the previous sentence. Licensor shall have the option to conduct physical inventories before termination, and before expiration and continuing until the end of the Sell-Off Period, in order to ascertain or verify such inventories and/or statement. Immediately upon the earlier of termination and expiration of the Sell-Off Period, Licensee shall furnish

Licensor a detailed statement certified by an officer of Licensee showing the number and description of Licensed Products on hand in its inventory and shall dispose of such inventory at Licensor's direction and at Licensee's expense. In the event Licensee refuses to permit Licensor to conduct such physical inventory, Licensee shall forfeit its right hereunder to dispose of such inventory. In addition to such forfeiture, Licensor shall have recourse to all other remedies available to it.

18. INJUNCTION: Licensee acknowledges that its breach of any of the terms or conditions of this Agreement, or its failure upon the expiration or termination of this Agreement to cease the manufacture of the Licensed Products and limit their distribution and sale as provided in Paragraph 17 hereof, shall result in immediate and irreparable damage to Licensor. Licensee also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof Licensor shall be entitled to equitable relief in the nature of an injunction and to all other available relief, at law and/or in equity.

19. RESERVATION OF RIGHTS: Licensor retains all rights not expressly and exclusively conveyed herein, and Licensor may license firms, individuals, partnerships or corporations to use the Licensed Properties and all other MLB Marks (including Derivative Works), artwork and textual matter in connection with other products, including other products identical to the Licensed Products contemplated herein. Notwithstanding any exclusivity granted herein, Licensor reserves the right to use, or license others to use and/or manufacture, the Licensed Properties on identical items as Premiums, and in connection with the trademarks, service marks, trade dress, and copyrights associated with the Minor League Clubs. Nothing in this Paragraph 19 shall constitute a waiver by Licensee of its patent rights or a license to Licensee's patent or trademark rights (not otherwise to be owned by Major League Baseball-affiliated entities pursuant to the terms of Paragraph 9 and Paragraph 15 of this Agreement) or a license to Licensee's patent or, except as set forth in Paragraph 4(H), trademark rights.

20. PAYMENTS AND NOTICES: All notices and statements provided for herein shall be in writing, and all notices hereunder are to be sent to Major League Baseball Properties, Inc., 245 Park Avenue, New York, New York 10167, Attention: General Counsel. All statements and payments shall be made to Major League Baseball Properties, Inc. and sent to an address designated by Licensor.

21. WAIVER, MODIFICATION, ETC.: No waiver, modification or cancellation of any term or condition of this Agreement shall be effective unless executed in writing by the party charged therewith. No written waiver shall excuse the performance of any act other than those specifically referred to therein. No waiver by either party hereto of any breach of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other provision hereof. The exercise of any right granted to either party hereunder shall not operate as a waiver. The normal expiration of the term of this Agreement shall not relieve either party of its respective obligations accruing prior thereto, nor impair or prejudice the respective rights of either party against the other, which rights by their nature survive such expiration. Licensor makes no warranties or representations to Licensee except those specifically expressed herein.

22. NO PARTNERSHIP, ETC.: This Agreement does not constitute and shall not be construed as constituting an agency, partnership or joint venture relationship between Licensee and Licensor and/or the MLB Entities. Licensee shall have no right to obligate or bind Licensor in any manner whatsoever, and nothing herein contained shall give or is intended to give any rights of any kind to any third persons.

23. **NON-ASSIGNABILITY AND LICENSEE REPRESENTATIONS:** Licensee acknowledges and recognizes: (a) that it has been granted the license described in Paragraph 1 because of its particular expertise, knowledge, judgement, skill and ability; (b) that it has substantial and direct responsibilities to perform this Agreement in accordance with all of the terms contained herein; (c) that Licensor is relying on Licensee's unique knowledge, experience and capabilities to perform this Agreement in a specific manner consistent with the high standards of integrity and quality associated with Major League Baseball as a national sport and with Major League Baseball-logoed merchandise; and (d) that the granting of the license under this Agreement creates a relationship of confidence and trust between Licensee and Licensor. This Agreement is personal to Licensee, and Licensee shall not sublicense or franchise any of its rights hereunder, and neither this Agreement nor any of the rights of Licensee hereunder shall be sold, transferred or assigned by Licensee without Licensor's prior written approval and no rights hereunder shall devolve by operation of law or otherwise upon any assignee, receiver, liquidator, trustee or other party. Licensee acknowledges and agrees that Licensor may assign this Agreement to a successor-in-interest or any of its affiliated entities without notice to, or approval by, Licensee. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

24. **PARAGRAPH HEADINGS:** Paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in governing, limiting, modifying, construing or affecting the provisions of this Agreement and shall not otherwise be given any legal effect.

25. **CONSTRUCTION AND JURISDICTION:** The validity, construction, and enforceability of this Agreement shall be governed by the internal laws of the State of New York, without giving effect to conflict of laws principles thereof. The United States District Court for the Southern District of New York and the Supreme Court of the State of New York, sitting in New York County, shall be the sole venues for any dispute arising directly or indirectly from the relationship created or the transactions contemplated by this Agreement. Each of the parties consents to the jurisdiction and venue of any such court and waives any argument that any such court does not have jurisdiction over such party or such dispute or that venue in any such forum is not appropriate or convenient. In the event that any of the parties commences any action against any other party in another jurisdiction or venue in respect of any such dispute, such other party shall be entitled, at its option, to have the action transferred to one of the jurisdictions and venues described in this Paragraph 25 or, if such transfer cannot be accomplished under applicable law, to have such action dismissed without prejudice.

26. **SEVERABILITY:** The determination that any provision of this Agreement is invalid or unenforceable shall not invalidate this Agreement, and the remainder of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

27. **TIME OF THE ESSENCE:** Time is of the essence of all parts of this Agreement.

28. **ACCEPTANCE BY LICENSOR:** This instrument, when signed by Licensee or a duly authorized officer of Licensee if Licensee is a corporation, shall be deemed an application for a license and not a binding agreement unless and until signed by a duly authorized officer of Licensor. The receipt and/or deposit by Licensor of any check or other consideration given by Licensee and/or the delivery of any material by Licensor to Licensee shall not be deemed an acceptance by Licensor of this application. The foregoing shall also apply to any documents relating to renewals or modifications hereof.

29. **INTEGRATION:** This Agreement, when fully executed, shall represent the entire understanding between the parties hereto with respect to the subject matter hereof and supersedes all previous representations, understandings or agreements, oral or written, between the parties with respect to the subject matter hereof.

30. **GRANT OR DENIAL OF APPROVALS:** In any instance where any approval is required under this Agreement (including, without limitation, pursuant to Paragraphs 7, 10, and 14), Licensee represents, acknowledges and agrees that such approval shall be granted or withheld in Licensor's sole discretion.

31. **SURVIVAL OF PROVISIONS:** Paragraphs 2, 6, 7, 8, 12, 13(A), (B), (C), (D), (F), (H), (I), (K), (Q), (R) and (Y), 15, 17, 18, 19, 21, 22, 24, 25, 26, 30, 31, and 32 shall survive any termination or expiration of this Agreement.

32. **MISCELLANEOUS:** By signing below, Licensee acknowledges that this Agreement is for the term specified in **Schedule G** only and that neither the existence of this Agreement nor anything contained herein shall impose on Licensor any obligation to renew or otherwise extend this Agreement after expiration of the License Period. Licensee acknowledges and agrees that Licensor may, through its counsel or other employees, agents or representatives, communicate directly with Licensee (including Licensee's business persons) concerning any potential or existing breach of this Agreement or any other matter relating to the Licensed Properties (other than in the context of actual litigation, arbitration, or mediation wherein Licensor and Licensee, respectively, are adversarial litigants) irrespective of whether Licensee's counsel is involved in such communications. Licensee further acknowledges and agrees that it has reviewed this Agreement with its counsel and understands and agrees to every provision contained herein. Licensee additionally acknowledges and agrees that no agreement shall confer renewal or extension rights unless executed by Licensor.

## SCHEDULE A

### MLB ENTITIES

The "MLB Entities" shall be defined as the thirty (30) Major League Baseball Clubs (each a "Club" and collectively the "Clubs"), the Office of the Commissioner of Baseball (the "BOC") and SBC Operations, Inc. ("SBC").

## SCHEDULE B

### LICENSEE LEGAL NAME AND ADDRESS

"Licensee" shall be defined as The Upper Deck Company with offices at 985 Trade Drive, Suite A, Las Vegas, NV 89030.

### LICENSEE PLACE OF INCORPORATION

Licensee is duly incorporated in the following City/State/Province: Nevada.

## SCHEDULE C

### LICENSOR INDEMNITEES

The "Licensor Indemnitees" shall be defined as Major League Baseball Properties, Inc., Major League Baseball Enterprises, Inc., Major League Baseball Properties Canada Inc., MLB Japan Co., Ltd., MLB Advanced Media, Inc., MLB Advanced Media, L.P., MLB Media Holdings, Inc., MLB Media Holdings, L.P., MLB Online Services, Inc. (MLB Advanced Media, Inc., MLB Advanced Media, L.P., MLB Media Holdings, Inc., MLB Media Holdings, L.P., and MLB Online Services, Inc. collectively referred to as "MLBAM"), the BOC, the Clubs and SBC.

## SCHEDULE D

### LICENSED PROPERTIES

(1) The following logos and word marks: American and National League logos and word marks, Major League word mark, Major League Baseball word mark, Major League Baseball silhouetted batter logos, MLB logos and word mark, I Live For This logos, and What A Game word mark.

(2) The primary, secondary and headwear logos, uniform lettering and designs, images, colors and color combinations, trade dress, characters, symbols, designs, likenesses, visual representations, and word marks, of the following Clubs: Baltimore Orioles, Boston Red Sox, Chicago White Sox, Cleveland Indians, Detroit Tigers, Kansas City Royals, Los Angeles Angels of Anaheim, Minnesota Twins, New York Yankees, Oakland Athletics, Seattle Mariners, Tampa Bay Devil Rays, Texas Rangers, Toronto Blue Jays, Arizona Diamondbacks, Atlanta Braves, Chicago Cubs, Cincinnati Reds, Colorado Rockies, Florida Marlins, Houston Astros, Los Angeles Dodgers, Milwaukee Brewers, New York Mets, Philadelphia Phillies, Pittsburgh Pirates, St. Louis Cardinals, San Diego Padres, San Francisco Giants and Washington Nationals.

(3) The following logos and word marks: All-Star Game logos and word mark, All-Star FanFest word mark, American and National League Championship Series logos and word marks, Division Series logos and word mark, Fall Classic logos and word mark, FanFest word mark, Home Run Derby logos and word mark, Major League Baseball All-Star FanFest primary and secondary logos and word mark, Midsummer Classic logos and word mark, and World Series logos and word mark.

(4) The primary, secondary and headwear logos, uniform lettering and designs, images, colors and color combinations, trade dress, characters, symbols, designs, likenesses, visual representations, and word marks, of the following Clubs: Anaheim Angels (subject to Licensor approval on a case-by-case basis), Boston Braves, Brooklyn Dodgers, California Angels, Houston Colt .45's, Kansas City Athletics, Los Angeles Angels, Milwaukee Braves, Montreal Expos, New York Giants, Philadelphia Athletics, Seattle Pilots, St. Louis Browns and Washington Senators (not to include the current Washington Nationals primary headwear logo).

(5) The following logos and word marks: Battle of the Bay logos and word mark, Bay Bridge Series word mark, Freeway Series word mark, I-5 Series word mark, I-70 Series word mark, I-95 Series word mark, Second City Series word mark, Show-Me Series word mark, and Subway Series logos and word mark.

(6) The following word marks and images: Atlanta Braves: Homer the Brave (image only) and Rally (image only), Baltimore Orioles: The Bird (image only), Boston Red Sox: Wally (image only), Cleveland Indians: Slider (image only), Colorado Rockies: Dinger (image and word mark), Detroit Tigers: Paws (image only), Florida Marlins: Billy the Marlin (image and word mark), Los Angeles Angels of Anaheim: Clutch (image only) and Scoop (image only), New York Mets: Mr. Met (image and word mark), Oakland Athletics: Stomper (image only), Philadelphia Phillies: Phillie Phanatic (image and word mark), Pittsburgh Pirates: Pirate Parrot (image and word mark), San Diego Padres: Swinging Friar (image and word mark), Seattle Mariners: Mariner Moose (image only), St. Louis Cardinals: Fredbird (image and word mark), Tampa Bay Devil Rays: Raymond (image only), and Texas Rangers: The Rangers Captain (image and word mark).

(7) The following logos and word marks: America At Its Best word mark, Baseball Fever Catch It logo and word mark, Baseball Max word mark, Baseball Official Game of Summer logo and word mark, Cactus League logos and word mark, Catch the Fever logo and word mark, Diamond Skills logo and word mark, Grapefruit League logos and word mark, Pitch Hit and Run logo and word mark, RBI Reviving Baseball In Inner Cities logos and word mark, Rookie League logo and word mark, Turn Ahead the Clock logo and word mark, Welcome To The Show word mark, and Yardball logo and word mark.

(8) The following logos and word marks: Boston Red Sox: Green Monster word mark, Red Sox Nation word mark; Chicago White Sox: Diamond View logo and word mark, SoxFest logo and word mark; Cincinnati Reds: It's A Whole New Ballgame word mark; Cleveland Indians: Game Face word mark, Tribe logo and word mark (as shall be pre-approved in writing by Licensor on a case-by-case basis); Colorado Rockies: The Rockpile word mark; Detroit Tigers: Tigers Care logo and word mark; Milwaukee Brewers: Brew Crew word mark, Home To Heroes word mark, BrewersFest logo and word mark, The Four Milwaukee Brewers Sausage Characters; New York Yankees: Legends Field logos and word mark, Yankees Fan Festival logo, Bronx Bombers word

mark, The House That Ruth Built word mark, Yankees Classics word mark; San Diego Padres: Compadres Club logo and word mark; Seattle Mariners: Junior Mariners Club logo and word mark, On Deck (stylized) word mark.

(9) The logos, word marks and images of the following ballparks: Ameriquest Field in Arlington, Angel Stadium of Anaheim, Bank One Ballpark, Busch Stadium, Citizens Bank Park, Comerica Park, Dodger Stadium, Fenway Park, Great American Ball Park, Hubert H. Humphrey Metrodome, Jacobs Field, Kauffman Stadium, McAfee Coliseum, Miller Park, Minute Maid Park, PETCO Park, PNC Park, Rogers Centre, SAFECO Field, SBC Park, Shea Stadium, Tropicana Field, Turner Field, U.S. Cellular Field, Wrigley Field, and Yankee Stadium.

(10) The logos, word marks and images of the following ballparks: Anaheim Stadium, Arlington Stadium, Astrodome, Atlanta Fulton County Stadium, Cleveland Municipal Stadium, Comiskey Park, Crosley Field, Exhibition Stadium, Forbes Field, Griffith Stadium, Memorial Stadium, Metropolitan Stadium, Milwaukee County Stadium, Oakland-Alameda County Coliseum, Olympic Stadium, Polo Grounds, Riverfront Stadium, Shibe Park, Sportsman's Park, The Ballpark in Arlington, The Kingdome, Three Rivers Stadium, Tiger Stadium, and Veterans Stadium.

(11) Diamond Collection word mark.

(12) Take Me Out To The Ballgame word mark.

(13) Licensor's Rookie Logo.

Unless specifically included above, Licensee is not authorized to use the name, image, or design of any Club mascot or ballpark.

## SCHEDULE E

## LICENSED PRODUCTS

1. Multi-color baseball trading cards in English, Spanish and/or Japanese (if and as approved by Licensor), measuring no larger than 5" x 7" in size or other sizes pre-approved in writing by Licensor, printed on any medium or composition pre-approved in writing by Licensor, featuring any of the Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-13, the names and/or likenesses of current Major League Baseball players in uniforms, and, in some cases, the names and/or likenesses of former Major League Baseball players in uniforms depicting any of the vintage Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-10 (subject to the third unnumbered paragraph in **Schedule E** below) and featuring statistics of each such player.

2. Limited edition four-color baseball trading cards in English, Spanish and/or Japanese (if and as approved by Licensor), measuring 2½" x 3½" in size, to be distributed at the Major League Baseball All-Star FanFest event during the License Period for which such baseball trading cards are produced, featuring any of the Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-13, the names and/or likenesses of current Major League Baseball players in uniforms, and, in some cases, the names and/or likenesses of former Major League Baseball players in uniforms depicting any of the vintage Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-10 (subject to the third unnumbered paragraph in **Schedule E** below) and featuring statistics of each such player.

3. Special promotional cards in English, Spanish and/or Japanese (if and as approved by Licensor), designed for sampling and trade shows only, featuring any of the Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-13, the names and/or likenesses of current Major League Baseball players in uniforms, and, in some cases, the names and/or likenesses of former Major League Baseball players in uniforms depicting any of the vintage Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-10 (subject to the third unnumbered paragraph in **Schedule E** below), featuring statistics of each such player, and available in styles and quantities and for uses pre-approved by Licensor in writing.

4. Multi-color baseball trading cards in English, Spanish and/or Japanese (if and as approved by Licensor), measuring no larger than 5" x 7" in size or other sizes pre-approved in writing by Licensor, printed on any medium or composition pre-approved in writing by Licensor, featuring any of the Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-13, the names and/or likenesses of current Major League Baseball players in uniforms, and the names and/or likenesses of former Major League Baseball players in uniforms depicting any of the vintage Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-10 (subject to the third unnumbered paragraph in **Schedule E** below), and featuring statistics of each such player.

5. Limited edition four-color baseball trading cards in English, Spanish and/or Japanese (if and as approved by Licensor), measuring 2½" x 3½" in size, to be distributed at the Major League Baseball All-Star FanFest event during the License Period for which such baseball trading cards are produced, featuring any of the Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-13, the names and/or likenesses of current Major League Baseball players in uniforms, and the names and/or likenesses of former Major League Baseball players in uniforms depicting any of the vintage Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-10 (subject to the third unnumbered paragraph in **Schedule E** below), and featuring statistics of each such player.

6. Special promotional cards in English, Spanish and/or Japanese (if and as approved by Licensor), designed for sampling and trade shows only, featuring any of the Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-13, the names and/or likenesses of current Major League Baseball players in uniforms, and the names and/or likenesses of former Major League Baseball players in uniforms depicting any of the vintage Licensed Properties specified in **Schedule D, Licensed Properties** Nos. 1-10 (subject to the third unnumbered paragraph in **Schedule E** below), featuring statistics of each such player, and available in styles and quantities and for uses pre-approved by Licensor in writing.

The right to use the following ballpark names and images are not granted hereunder: Cinergy Field, Coors Field, Dolphins Stadium, Ebbets Field, Edison International Field, Enron Field, Jarry Park, Joe Robbie Stadium, Pacific Bell Park, Qualcomm Stadium, RFK Stadium, SkyDome and 3Com Park.

Licensee acknowledges and agrees that, in addition to the other trademark limitations contained in **Exhibit 1** and as set forth therein, (a) the Washington Nationals "Nats" word mark must be featured along with another Licensed Property as shall be approved by Licensor on a case-by-case basis and (b) except with respect to "vintage" (as defined below) Licensed Properties, no Licensed Property of the Los Angeles Angels of Anaheim that contains any geographic distinction (e.g., "Anaheim" or "Los Angeles") may be used by Licensee on the Licensed Products or packaging therefor.

Rights to utilize (i) the names, likenesses and/or signatures of any individuals (including, without limitation, current or former Major League Baseball players), and (ii) any copyright, trademark or other property or identifications belonging to any entity other than those identified in Paragraph 1 and **Schedule D** of this Agreement (including, without limitation, rights in and to photographs used in the Licensed Products), are not granted under this Agreement. Upon request, Licensee must present to Licensor written evidence of having obtained the proper authorization to utilize any such names, likenesses and/or signatures.

In any season during the License Period, only players included on a Club's 25-man roster on or prior to August 31 of such season may be featured in the Release with current Major League Baseball players designed for and shipped during such season; provided that any player who was first included on a Club's 40-man roster after August 31 may be featured in the first "hobby/retail" "Release" (as defined in **Schedule P, Miscellaneous** No. 12) designed for the following calendar year and shipped prior to Opening Day of such following calendar year (and in subsequent Releases for the hobby or retail distribution channels which are also shipped prior to Opening Day of that same year), but such player may not thereafter be featured in any Release unless he is included on a Club's roster as of Opening Day for the year for which the Release is designed and in which it is shipped. Notwithstanding the foregoing, except as otherwise required by Paragraph 13(L), Licensor will not require Licensee to modify those Licensed Products already approved by Licensor pursuant to Paragraph 10 hereof, even if such Licensed Products are not shipped prior to Opening Day.

Unless otherwise approved in writing by Licensor, the Rookie logo Licensed Property must be featured on the front of each base card (not an insert card) first Released depicting a player who has never been included on any previous rookie card. Licensee agrees that it shall not use any "rookie" indication for any Licensed Products except as set forth in the preceding sentence.

All cards comprising the Licensed Products must include the Licensed Brand under which such Licensed Product is marketed on the back of each such card.

Unless otherwise approved by Licensor, all cards comprising the Licensed Products that contain swatches of Club uniform jerseys must also depict on such card the player in a uniform jersey for such Club of the same type as the jersey from which the swatch was obtained. For example, a player card containing a swatch of a Club's pinstriped home game jersey must also depict the player in such Club's pinstriped home game jersey.

Licensee may only feature former players in "vintage" (as defined below) uniforms as part of card sets. No more than twenty percent (20%) of all cards in a set of Licensed Product Nos. 1-3 may feature former Major League Baseball players in vintage uniforms. Twenty-one percent (21%) or more of all cards in a set of Licensed Product Nos. 4-6 must feature former Major League Baseball players in vintage uniforms.

For purposes of this Agreement, "vintage" shall mean: any item featuring, except as provided in the following sentence, a Licensed Property that is either: (a) first used by a League or Club before 1990, or (b) first used by a League or Club after 1990 but is no longer featured on a Club's regular season uniform(s) or otherwise currently used by a Club. In the case of Licensed Properties meeting (a) above that are still used on-field, it shall be determined by Licensor (in its sole discretion) whether such Licensed Property is to be depicted and/or is to be considered vintage.

## SCHEDULE F

### LICENSED TERRITORY

The fifty United States of America, the District of Columbia, and U.S. territories and possessions (excluding Puerto Rico), including U.S. military bases worldwide.

## SCHEDULE G

### LICENSE PERIOD

January 1, 2006 – October 31, 2009. For the purposes of this Agreement, the ten (10) month period from January 1, 2006 through October 31, 2006 and the three (3) succeeding twelve (12) month periods from November through October thereafter shall each be referred to as a "Contract Year".

## SCHEDULE H

### SELL-OFF PERIOD

November 1, 2009 – December 31, 2009.

## SCHEDULE I

### REPORTING PERIOD

Monthly.

## SCHEDULE J

### APPROVALS

Licensor shall have fifteen (15) Licensor business days to approve, consent to, disapprove, deny or comment upon all items or matters submitted to Licensor under this Agreement in accordance with Paragraph 10.