UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAJOR LEAGUE BASEBALL PROPERTIES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> THE UPPER DECK COMPANY, LLC, <br><br> Defendant. | No. 10 Civ. 0732 (RWS) <br><br> ECF Case |

## DECLARATION OF MICHAEL BERNSTEIN

I, MICHAEL BERNSTEIN, pursuant to 28 U.S.C § 1746, declare as follows:

1. I am Senior Corporate Counsel at The Upper Deck Company, Inc. ("Upper Deck"). I submit this declaration in support of Upper Deck's Opposition to Major League Baseball Properties, Inc.'s ("MLBP") Application for a Temporary Restraining Order and Expedited Discovery. I have personal knowledge of the facts set forth herein except where stated to be on information and belief, in which case, I believe those facts to be true.

2. I have been employed by Upper Deck for over five years. Currently, my responsibilities include the handling of all licensing for sports-related items, including baseball trading cards licenses. I also have experience negotiating Upper Deck's current license agreements with leagues and players associations.

3. I am aware that MLBP is seeking a temporary restraining order ("TRO") from this Court enjoining Upper Deck LLC, and all those acting in concert or participation with it (including distributors and retailers) from manufacturing, distributing, shipping, advertising, marketing, promoting, selling, or otherwise using certain MLBP trademarks on any products not

authorized by MLBP, including: (1) 2009 Signature Stars; (2) 2009 Ultimate Collection; and (3) 2010 Upper Deck Series I. I am aware that the requested TRO would also require Upper Deck LLC to immediately recall these products, and deliver them for destruction.

4. I participated on the team representing Upper Deck in its negotiations in the most recent license negotiation between Upper Deck and MLBP, which became effective in 2006, and I was fully appraised of the content of those negotiations. In my experience, while financial terms may be negotiable, the "standard" terms of the MLBP license agreement, including the language requiring an acknowledgement that the licensee can never make fair use of the marks at issue, even after the termination of the license, are rarely if ever negotiable.

5. In this case, while the parties negotiated the financial aspects contained in the schedules attached to the license, all of the intellectual property provisions, including Paragraphs 12, 13, 15, and 18, were not negotiable, presented by MLBP to Upper Deck on a take-it-or-leave-it basis. There was no opportunity for negotiation when it came to these provisions and the others not contained in the schedules.

6. As they have been for many years, Upper Deck's baseball products released in 2010 are officially licensed by the Major League Baseball Players Association ("the Players Association"). Under the terms of this agreement, Upper Deck is entitled to use the images and likenesses of professional baseball players on and in connection with its 2010 baseball card offerings. The Players Association license also permits Upper Deck to use facsimile signatures of certain baseball professionals on and in connection with its products and packaging.

7. In addition to its license with the Players Association, Upper Deck has obtained what is known as "highlight agreements" with individual players, which enables Upper Deck to obtain these players' original signatures for use in connection with its trading cards.

8.  Finally, Upper Deck has an exclusive spokesman agreement with Derek Jeter that gives Upper Deck the exclusive rights to use Derek Jeter's image on its packaging or his signature on its trading cards. Not surprisingly, Upper Deck has chosen to make the most of this important exclusive arrangement by repeatedly featuring an image of Derek Jeter on the packaging of its most important product of the year, Upper Deck Series 1.

9.  In addition to all of the rights described above, as in years past, this year Upper Deck also attempted to obtain a license from MLBP. However, MLBP ultimately elected not to grant Upper Deck a license after months indicating that they would, deciding instead to provide an exclusive license to Topps, Upper Deck's only competitor in the market for baseball trading cards. In fact, Upper Deck did not learn from MLBP that it intended not to grant Upper Deck a license until sometime in August 2009.

10. Therefore, this year, Upper Deck has endeavored to make baseball trading cards that walk the fine line of exploiting the various rights granted to it by the players without running afoul of the legitimate trademark rights of MLBP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York this 2nd day of February, 2010.

_____
Michael Bernstein