UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAJOR LEAGUE BASEBALL PROPERTIES, INC., <br><br> Plaintiff, <br><br> –against– <br><br> THE UPPER DECK COMPANY, LLC, <br><br> Defendant. | 10 Civ. 0732 (RWS) <br><br> ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CROSS-MOTION TO BIFURCATE AND STAY DISCOVERY WITH RESPECT TO TRADEMARK DAMAGES PURSUANT TO FED. R. CIV. P. 42(b)**

Defendant The Upper Deck Company, LLC ("Upper Deck") respectfully submits this memorandum of law in support of Upper Deck's cross-motion to bifurcate and stay discovery with respect to trademark infringement related damages pursuant to Rule 42(b) of the Federal Rules of Civil Procedure ("Rule 42(b)").[1]

Rule 42(b) gives the Court discretion to bifurcate issues and claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Bifurcation here would satisfy *all three* purposes. *First,* prejudice to Upper Deck would be avoided because Upper Deck would be given a better opportunity to prepare its defense on the merits of MLBP's trademark infringement claims without also having to devote limited time and resources to complex damages issues that may never become relevant. *Second*, discovery and trial preparation would

---

[1] Defendant Upper Deck does not oppose MLBP's motion for consolidation, but by way of this Cross-Motion, respectfully requests that the Court bifurcate the expedited consolidated proceedings requested by MLBP.

1

be expedited because the parties would not have to devote limited discovery and trial time to issues associated with trademark damages. *Finally,* the Court's time would be greatly economized because it would not have to hear motions or testimony relating to damages that would only become relevant *if* MLBP prevails on the merits of its trademark claims or if Upper Deck fails to prove any of its defenses to these claims. In sum, bifurcation makes sense here, especially in light of the expedited schedule.

## STATEMENT OF FACTS

On February 1, 2010, MLBP filed this action for various claims of trademark infringement and breach of contract against Upper Deck, and sought a temporary restraining order and preliminary injunction with regard to its trademark infringement claims. (*See* Docket Nos. 1, 2.) On February 3, 2010, after considering the parties' briefing, the Court denied MLBP's application for a temporary restraining order and set a hearing for February 10, 2010 to hear MLBP's motion for a preliminary injunction. After a scheduling conference before the Court on February 5, 2010, the parties agreed to the Court's proposal for a consolidated preliminary injunction hearing and full trial on the merits, pursuant to Federal Rule of Civil Procedure 65(a)(2), to commence on April 19, 2010. The parties are not in agreement, however, about whether this highly expedited trial schedule should include a determination of trademark damages. (*See* Declaration of Brendan J. O'Rourke, dated February 8, 2010 at 2 n.1.)

## ARGUMENT

Rule 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." The decision to bifurcate rests with the broad discretion of the Court, particularly when facing a request to bifurcate liability and damages phases. *See Dallal v. New York Times Co.*, 2009 WL 3680501,

2

at *3 (2d Cir. 2009) ("The district court was well within its discretion in bifurcating the liability and damages phases of the trial, a sensible means of achieving expedition and economy."); *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) (affirming bifurcation of liability and damages phases for trademark infringement claims).

In particular, courts routinely bifurcate liability and damages after consolidating a preliminary injunction hearing with a full trial on the merits. *See*, *e.g.*, *Jeglin By & Through Jeglin v. San Jacinto Unified School Dist.*, 827 F.Supp. 1459, 1461 (C.D. Cal. 1993) (consolidating preliminary injunction hearing and trial on the merits; bifurcating damages claims); *Amico v. New Castle County*, 654 F.Supp. 982, 988-89 (D. Del. 1987) (same); *Sea Girt Restaurant & Tavern Owners Ass'n, Inc. v. Borough of Sea Girt, N.J.*, 625 F. Supp. 1482, 1484 n.3 (D.N.J. 1986) (same); *Conner v. Jeffes*, 67 F.R.D. 86, 88 (M.D. Pa. 1975) (same).

Indeed, courts have bifurcated the liability and damages phases in circumstances virtually ***identical*** to those presented here. In *Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 753 (C.D. Cal. 1998), for example, the district court consolidated a trademark infringement preliminary injunction hearing and the trial on the merits, and then bifurcated the liability issue from the damages issue. *See also Tiffany & Co. v. Verrett*, 656 F. Supp. 706, 707 (S.D. Tex. 1986) (district court consolidated preliminary injunction hearing and full trial on the merits for trademark infringement claims, and bifurcated the liability phase from the damages phase); *Am. Ass'n for Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244, 247 (D.D.C. 1980) (consolidating preliminary injunction hearing and full trial on the merits for trademark infringement claims, and bifurcating money damages "to allow a more speedy resolution of the

main issues").[2] Given the severely expedited schedule facing the parties (and particularly Upper Deck, as defendant in this action), this Court should follow course and similarly bifurcate the trademark infringement and damages phases of this trial.

Here, all three purposes underlying Rule 42(b) support bifurcation. **First**, MLBP would only be entitled to trademark damages if it succeeds on its trademark liability claims; thus, it would be inconvenient and inefficient to conduct discovery and prepare for trial as to both liability and damages if the latter proves to be moot. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (bifurcation "may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue"); 9A Wright & Miller, *Federal Practice & Procedure* § 2388 (3d ed. 2009) ("If a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties."). This is particularly true in the present case, as Upper Deck has presented self-contained, straightforward defenses of fair use and functionality as to its use of MLBP's marks, which are entirely unrelated to any assessment of damages. Thus, bifurcation is in the interest of judicial economy.

In addition, MLBP may only recover Upper Deck's profits if it can prove that Upper Deck has willfully deceived consumers into purchasing its trading cards. *See George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992) ("[A] plaintiff must prove that an

---

[2] Typically, parties agree to bifurcate liability from damages when faced with an expedited trial schedule. *See*, *e.g.*, *Tower Pub'ns, Inc. v. MTS, Inc.*, 1991 WL 170725, at *2 (N.D. Ill. 1991) ("By agreement of the parties this case has been streamlined and accelerated. A short discovery period has been set and the issues have been bifurcated so that liability will be determined prior to discovery on the issue of damages.").

4

infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting."). Should MLBP fail to carry the onerous burden of proving Upper Deck's intention to deceive consumers, it will not be entitled to disgorge Upper Deck's profits. Thus, discovery and testimony concerning Upper Deck's profits would be superfluous unless and until MLBP has met its burden of proving willful deception.

*Second*, the calculation of damages in this case will be complex and intensive. If MLBP were to succeed on the merits of its trademark infringement claims, it will likely seek recover damages in the form of (a) any actual damages it has sustained and/or (b) the profits attributable to Upper Deck's continued use of MLBP's marks in the photographs of the players contained on the cards. *See* Complaint at 18-19 (requesting, *inter alia*: an accounting of Upper Deck's profits; payment of damages sustained by MLBP by reason of Upper Deck's allegedly wrongful acts in an amount to be determined at trial; three times the amount of Upper Deck's profits or MLBP's damages, whichever is greater; and punitive damages in an amount to be determined at trial); *see also* 17 U.S.C. § 1117(a); *Bravado Int'l Group Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 190 (E.D.N.Y. 2009). These two types of "damages" – MLBP's actual damages and Upper Deck's profits attributable to its use of the marks – involve entirely separate and distinct factual issues requiring independent proof. In fact, it is common for a trademark plaintiff to employ multiple damages experts to attest to various forms of damages. *See*, *e.g.*, *Kargo Global, Inc. v. Advance Magazine Pubs., Inc.*, 2007 WL 2258688 (S.D.N.Y. 2007) (plaintiff sought to introduce reports from survey expert and two damages experts on trademark infringement claims).

In addition, a central inquiry relevant to the calculation of damages on MLBP's disgorgement claim will be precisely how much of Upper Deck's profits stem from its incidental

use of MLBP's marks, and how much of its profits stem from the remaining, non-infringing elements present on Upper Deck's products. *See Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 305 (S.D.N.Y. 2001) ("If Wet Seal can prove that certain 'non-infringing elements' somehow contributed to the profits of the alleged infringing goods, it is entitled to deduct this from the profits it must disgorge to Troublé."); *Competition Specialities, Inc. v. Competition Specialities, Inc.*, 87 Fed. Appx. 38, 43 (9th Cir. 2004) (upholding jury instructions that plaintiff is not entitled to disgorgement of "the portion of the profit attributable to factors other than use of the infringed trademark"). This is another face of damages assessment that may require expert opinion.

In short, a determination of damages will undoubtedly involve multiple damages experts (possibly including accounting experts, licensing experts, royalties experts, and marketing experts), complex competing financial analyses, additional depositions of Upper Deck and MLBP executives, and other forms of time-consuming discovery into Upper Deck's and MLBP's accounting, likely extending the number of trial days beyond the current estimate of five days. Such complexity would justify bifurcation under a normal trial schedule; to include such discovery and resolution in a trial as expedited as the one here would severely prejudice Upper Deck's ability to effectively provide an effective defense. *See Am. Home Prods. Corp. v. Johnson & Johnson*, 111 F.R.D. 448, 454 (S.D.N.Y. 1986) (finding the bifurcation of liability and damages to result in "substantial judicial economy, especially in light of the complexity of the damage issues in this case").

***Third***, as is clear from MLBP's application for a temporary restraining order, its motion for a preliminary injunction, and its motion for an expedited trial schedule, MLBP is primarily concerned with receiving injunctive relief such that Upper Deck would no longer be able to sell

its cards that it alleges infringe MLBP's trademarks. Bifurcation would allow MLBP, if it succeeds on the merits, to receive this injunctive relief quickly, while providing Upper Deck with a fair opportunity to present a full and vigorous defense as to the proper calculation of damages in this case. Thus, MLBP would not be prejudiced by bifurcation, as long as its requested injunctive relief is available. *See Wilson v. U.S.*, 1995 WL 77506, at *1 (N.D. Cal. 1995) (consolidating preliminary injunction hearing and trial on the merits so as to resolve "urgen[t]" issues requiring "prompt resolution," and bifurcating issues underlying request for injunctive relief from remaining less urgent issues). In contrast, Upper Deck would be severely prejudiced in its ability to properly calculate damages, if any, including actual damages, lost profits, reasonable royalties, and appropriate disgorgement. MLBP's prayer for damages is unrelated to its requested expedition schedule; Upper Deck should not be steamrolled into an unreasonably expedited discovery schedule as to a potentially enormous damages verdict – an adverse determination of which could conceivably cripple Upper Deck's business beyond repair – merely because MLBP seeks an immediate injunction.

*Finally*, there is no overlap in the determination of liability and damages for MLBP's trademark infringement claims; damages is an entirely separate legal issue that the trier of fact considers after a determination of liability is entirely complete. While MLBP represents to the Court that "the evidentiary hearing at a preliminary injunction would be virtually the same as the evidentiary presentation at a final trial on the merits," (MLBP Br. at 3), this is only true as to *liability*. Damages, however, would not be considered at a preliminary injunction hearing, reinforcing the lack of overlap between the two issues. Given the complex discovery needed to calculate damages, including how much of Upper Deck's profits are attributable to MLBP's marks, the underlying justifications for the proposed expedited trial schedule are limited to

7

injunctive relief, and have no relation to damages. It is for this reason that courts routinely bifurcate determinations of liability and damages in trademark cases after consolidation. *See*, *e.g.*, *Walter*; *Tiffany & Co.*; *Am. Ass'n for Advancement of Science*, *supra.*

## **CONCLUSION**

For the foregoing reasons, Upper Deck respectfully requests that the Court grant its cross-motion to bifurcate and stay discovery on trademark damages pursuant to Fed. R. Civ. P. 42(b).

DATED: New York, New York
February 10, 2010

       QUINN EMANUEL URQUHART
       OLIVER & HEDGES, LLP


       /s/ Robert L. Raskopf_____
       Robert L. Raskopf
       Jessica A. Rose
       Todd Anten
       51 Madison Avenue, 22nd Floor
       New York, NY 10010
       Telephone: (212) 849-7000
       Facsimile: (212) 849-7100
       Email:  robertraskopf@quinnemanuel.com
                   jessicarose@quinnemanuel.com
                   toddanten@quinnemanuel.com

      *Attorneys for Defendant*
      *The Upper Deck Company, LLC*

# **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on February 10, 2010, true and correct copies of (1) DEFENDANT'S NOTICE OF CROSS-MOTION; and (2) MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CROSS-MOTION TO BIFURCATE WITH RESPECT TO TRADEMARK DAMAGES PURSUANT TO FED. R. CIV. P. 42(b) were electronically filed with the Clerk using the CM/ECF system which will automatically send email notification of such filings to all attorneys of record.

This 10th day of February, 2010.

                                                  /s/ Todd Anten
                                                   Todd Anten