UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAJOR LEAGUE BASEBALL
PROPERTIES, INC.

     Plaintiff,

v.

THE UPPER DECK COMPANY, LLC,

     Defendant.

Case No. 1:10-cv-732 (RWS)
ECF Case

---

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE LIABILITY AND DAMAGES PHASES OF CONSOLIDATED FULL TRIAL

Brendan J. O'Rourke (BO-2351)
Adam D. Siegartel (AS-6947)
Alexander Kaplan (AK-4207)
Patrick J. Dempsey (PD-8372)
Of Counsel

February 11, 2010

PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
(212) 969-3000
*Attorneys for Plaintiff*

Plaintiff Major League Baseball Properties, Inc. ("MLBP") submits this memorandum of law in opposition to the motion by The Upper Deck Company ("Upper Deck") to bifurcate the upcoming trial into separate liability and damages phases. Upper Deck seeks one trial that would cover liability on **all** claims and damages only on the contract claims (including damages on claims that relate to the trademark/intellectual property-related provisions in the contract), and a second trial directed only to the trademark/unfair competition-related damages portion. Bifurcation runs directly counter to the purpose of consolidating the preliminary injunction with a full trial on the merits in the first place, namely, judicial economy.

Moreover, bifurcation may potentially prejudice MLBP. First, Upper Deck does not seek to bifurcate damages on the contract claims. Many of the financial issues on the trademark/unfair competition-related claims and the contract claims overlap and could be covered by the same marketing/financial/licensing witnesses. Second, if Upper Deck is to be believed, it has claimed that unless it is able to continue producing the trading cards at issue in this litigation, it will suffer "catastrophic" and "massive" hardship, and its very survival will be threatened. Thus, putting off the trademark/unfair competition-related damages phase of this litigation until after liability is adjudicated increases the likelihood that Upper Deck would seek bankruptcy protection or go out of business altogether during the interim period between trials, prejudicing MLBP's ability to fully and promptly recover its damages and potentially forcing MLBP to pursue trademark/unfair competition-related damages in bankruptcy court.

As discussed in MLBP's previously-filed motion to consolidate, both parties have adequate time to prepare all aspects of their cases in advance of the April 19 full trial. The damages issues are straightforward, and bifurcation offers no meaningful benefit in terms of convenience or judicial economy. Upper Deck's motion should be denied so that the parties may

efficiently resolve all disputed issues within the single trial that has now been scheduled for April 19, 2010.

## STATEMENT OF FACTS

On February 1, 2010, MLBP filed its complaint and motion for a temporary restraining order. *See* February 8, 2010 Declaration of Brendan J. O'Rourke in Support of MLBP Motion to Consolidate (the "O'Rourke Decl.") ¶ 3. In its complaint, MLBP sought damages for breach of contract stemming from Upper Deck's failure to (a) make contractually-required payments and to satisfy other obligations, *and* (b) comply with trademark and other intellectual property-related contract provisions. MLBP also sought damages for trademark infringement and other trademark and unfair competition-related statutory and common law violations.

On February 3, the Court set a February 10 hearing for MLBP's motion for a preliminary injunction. *Id.* at ¶ 4. On February 4, counsel for MLBP and Upper Deck began discussing the most efficient means to litigate the claims in this action, including the possibility of combining the preliminary injunction with a full trial on the merits in an expedited final trial under Fed. R. Civ. P. 65(a)(2). *Id.* at ¶ 5. The parties estimate that one week will be needed for that consolidated preliminary injunction hearing and full trial. *Id.*

On February 5 the parties appeared before the Court for a scheduling conference. *Id.* at ¶ 6. At the conclusion of that conference, Upper Deck agreed to the Court's proposal for a consolidated preliminary injunction hearing and full trial commencing on April 19, 2010. *Id.* at ¶ 7. The parties also agreed to streamline this proceeding and reduce the parties' burden in advance of the April 19 full trial, by agreeing that (a) if the consolidated trial commences on April 19, 2010, MLBP would not add as additional defendants in this action any of Upper Deck's distributors that are neither owned nor controlled by (i) Upper Deck, or (ii) any individual or entity that owns or controls

2

Upper Deck; and (b) Upper Deck would not release its "Series 2 2010" set of baseball trading cards until, at least, the conclusion of that April 19 trial. *Id.* at ¶ 8.

As directed by the Court, on February 8, MLBP filed a motion to consolidate the preliminary injunction hearing with the full trial on the merits, with that consolidated trial set to begin on April 19, 2010. Upper Deck has now formally agreed to the consolidated trial commencing on April 19.

In its opposition to MLBP's motion for a temporary restraining order, Upper Deck repeatedly emphasized the "devastating," "catastrophic," "overwhelming," and "tremendous" financial and reputational losses that it would suffer if it is enjoined from distributing its infringing unauthorized trading cards bearing the MLB Marks, and that such losses would accumulate into the millions of dollars. *See* Upper Deck Memorandum of Law Opposing MLBP's Motion for Temporary Restraining Order, at 1, 5, 25; Mashereh Declaration in Support of Upper Deck Opposition ¶¶ 7-17. Upper Deck now repeats this argument in its bifurcation motion, stating that a damages verdict "could conceivably cripple Upper Deck's business beyond repair." *See* Upper Deck MOL at 7. Thus, Upper Deck has now taken the position that unless it can continue distributing its unauthorized infringing trading cards bearing the MLB Marks, it may be forced into bankruptcy.

## ARGUMENT

### I. UPPER DECK HAS NOT SHOWN GOOD CAUSE FOR BIFURCATING THE LIABILITY AND DAMAGES TRIALS OR RELATED DISCOVERY

The Federal Rules of Civil Procedure state that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The moving party bears the burden of establishing that separate trials are necessary to prevent prejudice or

3

confusion and serve the ends of justice." *Bowers v. Navistar Intern. Transp. Corp.*, 1993 WL 159965, at *1 (S.D.N.Y. May 10, 1993). Upper Deck has failed to carry its burden.

In its motion, Upper Deck ignores that courts have repeatedly established that bifurcation "is the exception, not the rule." *See Weddingchannel.com, Inc. v. The Knot, Inc.*, 2004 WL 2984305, at *1 (S.D.N.Y. Dec. 23, 2004) (Sweet, J.); *see also Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 245, 246 (S.D.N.Y. 1993) (Sweet, J.) (denying motion to bifurcate liability and damages and holding that "separate trials remain the exception rather than the rule, regardless of the nature of the action . . . efficient judicial administration favors having only one trial whenever possible"; also holding that there is a "fundamental presumption which favors the trial of all issues to a single jury and underlies the assumption of Rule 42(b) that bifurcation . . . is reserved for truly extraordinary situations of *undue* prejudice") (emphasis in original; internal quotes omitted); *Cranston Print Works Co. v. P. Mason Prods.*, 1998 WL 799171, at *3 (S.D.N.Y. Nov. 13, 1998) (bifurcation is exception not rule); *Sunenblick v. Harrell*, 145 F.R.D. 314, 317 (S.D.N.Y. 1993) ("separation of issues is not the usual course that should be followed").

Instead, Upper Deck argues that bifurcation is warranted because damages issues may ultimately be moot if Upper Deck is found not liable. *See* Upper Deck MOL at 1, 4. This argument, however, could be made in **any litigation**, and Upper Deck has failed to show why this case is different in this regard than any other case.

Upper Deck also argues that bifurcation commonly results following the consolidation of a preliminary injunction hearing and full trial. *See id.* at 3. However, Upper Deck's argument is belied by its failure to cite a single supporting decision from *anywhere* in the Second Circuit, much less from this District, and does not cite a single decision from the last ten years *anywhere*. *See id.* Instead, Upper Deck bases its argument on a handful of scattered decisions that are

4

primarily twenty-five to thirty years old. *See id.* Notably, in none of these decisions was the court ruling on a party's request for bifurcation, and there is no indication in any of these decisions that bifurcation was being opposed. Upper Deck's inability to cite a single decision from this Circuit, or any recent decision from anywhere, indicates that bifurcation following consolidation is neither common nor preferred.

### A     BIFURCATION WILL HINDER JUDICIAL ECONOMY AND CREATE INEFFICIENT AND DUPLICATIVE PROCEEDINGS

"[S]eparate trials are inappropriate when the issues, witnesses and documentary evidence overlap." *Bowers*, 1993 WL 159965, at *1; *see also Monaghan*, 827 F. Supp. at 245-46 (S.D.N.Y. 1993) (Sweet, J.) (holding that "the court may find bifurcation to be inappropriate where the issues, witnesses and documentary evidence central to both claims overlap or where the party opposing bifurcation will be prejudiced thereby," and that there is "an inevitable overlap of witnesses and documentary evidence central to both liability and damages claims").

That is certainly the case here, where issues relating to infringement and likelihood of confusion will also be relevant to the calculation of MLBP's damages and/or defendants' profits. *See HCC, Inc. v. R H & M Machine Co.*, 1998 WL 849417, at *2 (S.D.N.Y. Dec. 4, 1998) (finding bifurcation inappropriate in a patent infringement and unfair competition lawsuit because "[p]roof of liability . . . is likely to include witness testimony as to the allegedly infringing product's effect on plaintiff's and defendants' profits," which would also be "addressed again in the damages phase as part of the assessment of . . . defendants' profits, and other elements of damages"); *see also Granite Computer Leasing Corp. v. Travelers Indemnity Co.*, 1988 WL 108495, at *1 (S.D.N.Y. Oct. 13, 1988) (finding plaintiff's liability claim "intertwined with its claim of damages, including punitive damages, due to [defendant's] alleged bad faith"). "Such duplicative testimony and redundant assessment of factual issues would be

inefficient, reducing rather than increasing judicial economy." *See HCC, Inc.*, 1998 WL 849417, at *2.

Upper Deck has not moved to bifurcate MLBP's damages claim based on Upper Deck's breaches of contract, but only MLBP's trademark infringement-related damages (which would also include MLBP's other trademark and unfair competition-related damages). However, MLBP may very well choose to have the same damages and marketing experts testify as to MLBP's lost revenues and Upper Deck's unlawful profits that are derived from Upper Deck's infringing trading cards *and* the accounting to which MLBP is entitled based on Upper Deck's breaches of contract. For example, because Upper Deck has breached trademark and other intellectual property-related contract provisions, the witnesses who testify as to MLBP's contract damages from such breaches will also provide testimony regarding a variety of trademark and intellectual property issues (trademark valuations; licensing and marketing issues; MLBP's lost revenues; Upper Deck's unlawful profits; etc.). If it is then necessary to have a second trial relating to MLBP's damages from Upper Deck's trademark/unfair competition-related statutory and common law violations – apart from Upper Deck's trademark and other intellectual property violations contained in the contract – this testimony will need to be repeated.

Thus, there is a clear overlap in connection with MLBP's trademark/unfair competition-related and contract damages theories, and thus the potential for inefficiency and inconvenience if the trial is bifurcated. In such circumstances, this Court has, and in this case should, refuse to bifurcate. *See In re Blech Securities Litig.*, 2003 WL 1610775, at *15 (S.D.N.Y. Mar. 26, 2003) (Sweet, J.) (denying bifurcation because "the issues of liability and damages are intertwined . . . resulting in an inevitable overlap of witnesses and documentary evidence central to both claims," and "[p]laintiffs will be compelled to recall both of its expert witnesses, as well as reintroduce

the documentary evidence upon which their opinions are based, should Plaintiffs be required to separately litigate the issue of damages after a jury trial is held on the issue of liability"; explaining that "[c]ourts grant bifurcation when it would limit or streamline the remaining issues. Such streamlining can only take place where the need to examine the same witnesses in both phases of the separated trial would be at a minimum. Otherwise, duplicative testimony and redundant assessment of factual issues would be inefficient, reducing rather than increasing judicial economy") (internal citations omitted).

Further, "disposition of this matter might be considerably delayed and the cost multiplied if, at the close of the liability portion of the trial, the parties only then commenced discovery concerning damages." *Sunenblick*, 145 F.R.D. at 317 (denying request to bifurcate liability and damages in an action for trademark infringement). A single discovery period and a single trial will obviate the problems that might arise from the above-described overlap between liability and damages issues in this case. *See, e.g., Dallas v. Goldberg*, 143 F. Supp. 2d 312, 316 (S.D.N.Y. 2001) (denying motion for bifurcation where movant failed to "dispute the overlapping nature of the relevant evidence"); *see also Dewey Ballantine LLP v. Original IFPC Shareholders, Inc.*, 2004 WL 230969, at *1 (S.D.N.Y. Feb. 6, 2004) ("[I]n a case of this length [i.e., an estimated trial length of five days], it would be inefficient to proceed in two phases").

### B    THE DAMAGES DETERMINATIONS IN THIS LITIGATION ARE SUFFICIENTLY STRAIGHTFORWARD

None of the damages at issue here "present the multiplicity or complexity of claims which implicates a jury's ability to compartmentalize and separate the various issues." *Agron*, 1997 WL 399667 at *4. Upper Deck's allegations regarding burdensome damages discovery and trial preparations are conclusory and unsubstantiated. *See, e.g., Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995) (the defendant "has not shown that discovery on damages will

be complicated, expensive or time consuming, nor has it demonstrated that it will take a particularly long time to present the evidence on damages to the jury"); *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 622 (N.D. Ill. 2000) (the defendant had not shown that the damages portion of the case "would necessitate the review of 'millions of documents' or 'voluminous' amounts of evidence").

Nor has Upper Deck explained how the damages issues in this case are any more complicated than those in any other trademark case. *See, e.g., Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649, 651 (7th Cir. 2003) (damages in trademark/trade dress infringement action "are sufficiently easy to calculate"); *see also Real*, 195 F.R.D. at 622-23 ("[a]lthough Defendant claims that complex damages calculations may be involved, there is no evidence to suggest that this computation is more unusual, complex or complicated than the average patent case"); *Home Elevators, Inc. v. Millar Elevator Serv. Co.*, 933 F. Supp. 1090, 1091 (N.D. Ga. 1996) ("although both [the lost profits and reasonable royalty theories in a patent case] require the proof of numerous factors, the defendants have failed to show how the proof of damages in this particular case will be especially complex").

### C     **MLBP WOULD BE PREJUDICED BY BIFURCATION**

Upper Deck has not demonstrated that it will suffer any prejudice if this proceeding is not bifurcated. Instead, the only argument advanced by Upper Deck is that a damages determination may "cripple Upper Deck's business beyond repair." *See* Upper Deck MOL at 7. However, even if true, Upper Deck would be in the same situation irrespective of when the trademark/unfair competition-related damages trial is held. Thus, that is not prejudice caused by a fully consolidated trial. Moreover, if Upper Deck is truthful that any injunction in this case will have "devastating" and "catastrophic" financial and reputational consequences, then, if MLBP's damages are not determined at the same time as liability, there is a real likelihood that

8

Upper Deck would file for bankruptcy or go out of business altogether before MLBP's damages are determined by this Court. This would severely frustrate and prejudice MLBP's ability to obtain relief from Upper Deck.

## CONCLUSION

For all of the foregoing reasons, MLBP respectfully requests that the Court deny Upper Deck's motion to bifurcate. The parties and this Court have already agreed to an efficient consolidated schedule, the overarching purpose of which is to resolve all disputed issues within a single hearing rather than two trials with overlapping issues. Bifurcation, particularly in this fashion proposed by Upper Deck, is fundamentally at odds with that overarching purpose. The parties have been afforded adequate time to prepare all issues for the full trial that begins on April 19, 2010 and, because there are no countervailing interests that militate in favor of disturbing that schedule, Upper Deck's motion should be denied.

Dated: New York, New York
February 11, 2010

PROSKAUER ROSE LLP

By: ___s/Brendan J. O'Rourke___
Brendan J. O'Rourke (BO-2351)
Adam D. Siegartel (AS-6947)
Alexander Kaplan (AK-4207)
Patrick J. Dempsey (PD-8372)

1585 Broadway
New York, New York 10036
(212) 969-3000
borourke@proskauer.com

*Attorneys for Plaintiff*
*Major League Baseball Properties, Inc.*